Opinion of the Court.
John Grundy bought of John Jackson four hundred acres of land, and received his bond for the conveyance, on the 6th of August 1795, and took possession of, and held the land ; the conveyance to be made in a reasonable time. Some time afterwards, he commenced a suit against Jackson for a failure to convey; and having paid Jackson two slaves, as part consideration for the land. Yates and Davis claimed the slaves, and brought suit against John Jackson for them. While both suits were pending, all the parties came to an adjustment, on the 24th of May 1803, in which Yates and Grundy, by a sealed writing, stipulated to secure the title of the slaves to Jackson, and that Jackson should remove all interfering claims on the four hundred acres of land, and convey it according to his bond, and that the suit for conveyance should be dismissed, each party paying their own costs ; and that further controversy should be left to arbitrators, respecting fifty acres of the land claimed by some other claimant, and if Jackson could not get the title for said fifty acres, they were immediately to bring suit *12 for it, and Grundy to wait accordingly until its termination. In the month of November 1810 Grundy commenced this suit against John Jackson and his son, William Jackson, who was bound with and for his father in the agreement of 1803, to compel a conveyance of the land, alleging that the land was paid for, and requiring the Jacksons to show that they had removed all interferences. Before any answer, both Grundy, the complainant, and John Jackson, died, and the suit was revived in the names of, and against their respective heirs and representatives. The heirs of John Jackson answered, and admitted the agreements but deny that the land was paid for, and exhibit three bonds of fifty pounds each, executed to their ancestor by John Grundy in his lifetime. They do not admit any interferences, and declare that the united possession of Jackson and Grundy is upwards of thirty years standing. They further allege, that John Grundy, after the last agreement, obtained the possession of the two slaves, either from their ancestor or his daughter. Esther Jackson, to whom he had given some claim to them, under the pretext of hire ; and they require them to be restored, and the balance of the purchase money paid, and in that event they profess themselves willing to convey the land.
Statement of the case
Thomas Dean, the administrator of Jackson, filed his answer in the nature of a cross bill, setting forth the same facts, with regard to Grundy’s possession of the slaves ; alleges that they have increased, and requires the names and ages from the executors and heirs of Grundy ; and alleges, that on the 5th of February 1818, he purchased the slaves of John Jackson, they then being in possession of John Grundy, and exhibits a bill of sale to that effect. He avers, that he brought a suit for the slaves, relying on said bill of sale, against John Grundy in his lifetime, but was nonsuited, on the ground that his bill of sale did not entitle him to the slaves, until the land was conveyed by Jackson to his vendee, Grundy. He makes both Grundy’s heirs and John Jackson’s heirs defendants, and prays that the court may, on a final decree directing the land to be conveyed, also direct the slaves to be given up to him, and their hire to be accounted for, from the date of his bill of sale, by the representatives of John Grundy. Grundy’s heirs answer, ad *13 mitting the possession of the slaves to have been some time with John Jackson ; but allege that it was only until others of smaller value could be procured. Some of them admit that they had understood that their ancestor had got them back by hire, and none of them deny some claim in Jackson. They also admit the suit by Dean, and his defeat.
A purchaser in possession under his purchase, buying in an adverse claim, cannot claim a rescision of the contract made with his first vender, on the ground of the validity of the after, acquired title, and the invalidity of the first, without surrendering back the possession to his first vender, and taking the chance of opposing the last acquired title to the first. De minimis lex non curat
*13 Jackson’s representative brought suit at common law, in covenant, on the three bonds for fifty pounds each ; and pending this controversy, the jury, on the trial of the issue of covenants performed, found for the executors of Grundy. This fact is suggested in a supplemental bill ; so that this claim need not be further noticed.
The court below decreed in favor of Grundy’s heirs a conveyance of the land, upon their surrendering the slaves and accounting to Dean for their hire, from the date of his bill of sale up to the rendition of the decree ; from which decree, Grundy’s heirs and executors have appealed.
1. We cannot doubt, that the slaves were first paid to Jackson, by Grundy, for the land, and that Jackson having given his daughter, Esther, some claim or right to the use of them, John Grundy obtained them from her by way of hire. This claim might have entitled her to the hire; but she is party to this suit, and does not resist the right of Dean to the hire; the court, therefore rightly allowed it to him. And the decree which subjected Grundy’s heirs to account for the slaves and their hire, we deem correct. One of Grundy’s heirs suggests the purchase of an interfering claim, to the amount of fifty acres, from Dean, and alleges the claim to be valid and superior to Jackson’s, and prays a deduction for it. This was disallowed by the court below, and we think, correctly ; for although he exhibits a title, it is not shown certainly, that it does interfere, or that the claim is superior to Jackson’s. But if it does interfere, he could not be entitled to a rescision of the contract pro tanto, without surrendering back the possession which his ancestor acquired from Jackson, and being left to the chance of regaining it by his own claim, when opposed to that of Jackson, when, according to his own showing, this possession is sold to Samuel Grundy, and this suit is brought for the purpose of procuring *14 the title for him. Nor can he be entitled to a credit for the sum paid for this fifty acres ; for, assuming it as correct, that Jackson would be bound to pay for claims bought in by Grundy, which is very questionable, the only consideration shown by his deed to be given to Dean, is one shilling, and this is too trivial a sum to be worth controversy. De minimis non curat lex.
Under what circumstances mutual demands connected with the same transaction, will not be set off, the one against the other.
What a juror may say after his discharge, respecting the principles on which their verdict was made up, although it is said immediately afterwards, and in the presence of the court, is not evidence.
*14 2. Grundy’s heirs have alleged that their ancestor obtained a judgment against William Jackson, for a sum of money, and they exhibit the record of the judgment; and pray this judgment to be discharged, before the slaves are accounted for or their hire paid. It does appear that this judgment was obtained against William Jackson, on some transaction arising out of the dealings of the parties with respect to this land ; but, without further describing it, suffice it to say, that it does not compose a part of the original contract for land, so as to entitle it to be set up in the same suit, or require it to be specifically decreed in the same decree. Nor is it in any manner blended with the hire of the slaves, so as to entitle them to a discount for it, against Dean. They have their remedy at law for it, against William Jackson, or against the representatives of his father, who appears to be bound in the contract on which the judgment is founded, although he is not included in the judgment itself; so that there is no necessity of blending it with this transaction.
On the trial of an inquiry directed by the court to ascertain the hire of the slaves, the heirs of Grundy questioned the right of Dean to the hire from the date of his bill of sale; but the court decided otherwise, and we see no objection to that opinion. From that date the title was in Dean, and Grundy received the hire, which equitably belonged to Dean.
3. The heirs of Grundy, on that inquiry, gave in evidence, that one of the slaves was sick for a considerable time, and was put under the hands of a physician, and boarded by another individual, to be near the physician ; and they next gave in evidence the account of the physician and the person who boarded the slave during his illness. The jury retired, and returning to the bar and informed the court that they had agreed upon the respective hires of the slaves per year, and stated what these sums were. On this data a cal *15 culation was made of the amount, and the aggregate agreed to by the jury, and entered of record, and the jury were discharged; but, while part of them remained at the bar, the counsel for the heirs of Grundy enquired of them, in the hearing of the court, whether they had allowed the boarding and physician’s bill; to which they replied in the negative. The counsel, on this, moved for a new trial; but the court overruled the motion, and the heirs of Grundy excepted.
The hirer of slaves is chargeable with physicians' fees and the expences of their sickness, unless there is an express agreement to the contrary, between him and the owner.
After a juror is discharged, any thing he may say about the cause, whether in or out of the hearing of the court, is no more evidence, than the saying of any other individual; and his oath is as requisite, as it would be from another. Therefore, the motion was properly overruled, even if the facts were sufficient to warrant the granting of a new inquiry. But we by no means admit the facts to be sufficient, if true; for it is decided by this court, that the hirer of a slave is responsible for physician’s fees and expences of sickness, unless there is some stipulation to the contrary. 1 Bibb 541.
4. One other point presents itself to the consideration of the court. The bill of sale from John Jackson to Dean expresses on its face, that Dean is to pay to John Grundy seventy-four dollars, and thirty cents of the consideration, on account of an incumbrance or lien to that amount, which Grundy held on the slaves, or one of them. This money Dean tendered to Grundy, before he brought his suit for the slaves, in which he was defeated. But the money was not received by Grundy; nor was it ever paid, according to Dean’s own statements. In equity, therefore, Dean ought to account for it, with interest before he received the slave. And although hire is assessed far beyond that amount, yet the court below has decreed the whole of it, without allowing Grundy’s representatives that credit to which they were entitled. In this respect, it must be corrected.
The decree, as between Grundy’s heirs and executors and Jackson’s heirs, must be affirmed with costs ; and between Grundy’s heirs and Dean, it must be reversed with costs, and a mandate sent to the court below to enter a decree in conformity with this opinion.