Andress v. Roberts.

## ANDRESS *vs.* ROBERTS.

1. The amendment of an execution, by striking out the name of a person, not a party to the judgment, and which name had been improperly inserted in the execution, does not affect its lien.
2. The delivery of an execution to a Bank Marshal, appointed under the act of 1843, whilst that act was in force, created a lien on the goods of the defendant, co-extensive with the limits of the State.— (DARGAN, C. J., dissenting.)
3. The Act of 1843, (Clay's Dig. 118, § 86,) confering on Marshals, appointed by the State Bank and its Branches, power to serve process, &c., did not conflict with the 24th sec. of the 4th article of the Constitution.

ERROR to the County Court of Monroe.

F. S. BLOUNT, for the plaintiff.

A. B. Cooper and Leslie, for the defendant.

CHILTON, J.—This was a motion, made by the defendant in error against Andress, as sheriff of Monroe, for failing to pay over certain monies, which it was alleged he had collected on an execution, placed in his hands on the 23d January 1845, in favor of the defendant in error against one Neal Beard, for $6,810 41—the sum collected amounting to the sum of three thousand six hundred and one dollars and fourteen cents.

As an answer to this motion, the defendant pleaded that the Branch of the Bank of the State of Alabama at Mobile, on the 5th day of June 1844, recovered a judgment in the County Court of Mobile against the said Neal Beard for the sum of forty-five hundred and eighty-five dollars and seventy-five cents, besides costs; that execution issued upon said judgment against said Beard and one Abraham Godbold, on the 15th day of July 1844, and was received by one Jacob S. Marsh, agent for said Bank, who returned the same " no property found;" that on the 28th day of Feb. 1845, a second execution issued on said judgment against said Neal Beard alone, which was received by said defendant, William F. Andress, as sheriff of Monroe county, on the 3d March 1845, and the same was levied by the said Andress, on the 7th day of March 1845, on certain lands and slaves mentioned in the levy endorsed on said execution, all which were sold by the defendant on the 7th day of May 1845, for the sum of $6,951; and that at the June Term 1845, the said Branch Bank moved the County Court of Mobile to amend the execution, which had previously issued against Beard and Godbold, so as to make it conform to the judgment, which motion was granted and the same was amended; and the defendant averred that as the said Branch Bank obtained the first judgment against said Neal Beard and issued the first execution, which was received by the proper officer before any execution was issued on the judgment of said Edmund W. Roberts, in his rule mentioned, and has regularly issued its executions on the judgment in its favor since the rendition of the same, by which its lien has been preserved, it is entitled to have its said judgment first paid out of the proceeds of the property sold by the said defendant, Andress, sheriff as aforesaid, on the said 7th May 1845; and so he, the said plaintiff Roberts,

ought not to have judgment against him on the motion. To this plea there was a general demurrer, which was sustained by the court, and judgment was rendered against the sheriff for the sum of $3,601 14, to reverse which this writ of error was sued out.

1. We deem it unnecessary to say more, in respect to the amendment of the former execution which issued, as well against Godbold as Beard, than that the Court possessed the power to make it, and its lien, if any attached under it, was not in any degree affected by the amendment, which consisted merely in striking out the name of Godbold, that had been improperly inserted.

2. The main question is, did the delivery to the bank agent of such previous *fi. fa.* confer a lien, so as to give to an alias execution in favor of said Bank priority of satisfaction over an execution in favor of Roberts, which came first into the sheriff's hands? If the delivery of the execution to the bank agent created a lien, then it is clear that if there has been no chasm in the issuance of execution since, the lien is preserved and transfered to the last execution, which would entitle the Bank, and not Roberts, to the money in question.

The lien, as dependent upon a delivery to the bank agent, is assailed upon two grounds—1st. It is said the statute gives the lien, from the time the execution goes into the hands of the *sheriff* of the county in which the personal property then is, and does not give this effect to a delivery of such execution to a bank agent.—Clay's Dig. 208-9, §§ 41, 42. The statute reads, that "No writ of *fieri facias*, or other writ of execution, shall bind the property of the goods, against which such writ is sued forth, but from the time that such writ shall be delivered to the sheriff, under-sheriff, coroner, or other officer, to be executed; and for the better manifestation of the said time, such sheriff, coroner, or other officer, his deputy or agent, shall, upon the receipt of any such writ, without any fee thorefor, endorse upon the back thereof the day of the month and year he received the same; and if two or more writs against the same person shall be delivered on the same day, that which is first delivered shall be first satisfied." This act was passed in 1807.

By the 4th section of the act of 1843, (Clay's Dig. 118, § 86,) the Bank of the State of Alabama and its several branches were

Andress v. Roberts.

each authorised to appoint an agent, " who shall have the power to serve notices, subpœnas, attachments, executions, and other process, and have the same powers, and shall be entitled to the same fees, and shall observe the same regulations, as the existing laws prescribe to sheriffs, and said banks shall require of said officers a bond in the penalty of not less than ten thousand dollars, faithfully to perform all the duties of their office," &c.

What object had the Legislature in view in authorising the banks to appoint such officers, confering upon them the same powers, the same fees, and subjecting them to the same regulations, which the existing laws prescribe to sheriffs? In my opinion, the answer is, that whereas the banks were frequently subjected to much inconvenience, and sometimes to loss, from having executions in the hands of the various sheriffs of the State, this could be remedied by the appointment by them of an agent, who might take charge of the whole business of the banks, and who, having no other process than such as belonged to the banks in his hands, could give it that attention which it required. It was a remedial statute, designed to facilitate the collection of the demands due the State Bank and branches, and not to take away any of the incidents, which attached to process in favor of these banks, when placed in the hands of the respective sheriffs. If the execution in the hands of the bank agent is shorn of its lien, then the act would seem to be an ingenious artifice to postpone the debts due to the banks, which it was contemplated should be collected by its agent, to executions, &c. in the hands of sheriffs. But we are not at liberty so to treat it, and such could never have been the intention of the framers of the act. Why are these agents required to endorse on the back of the executions, which go into their hands, the day of the month and the year when received by them? The act then in existence, prescribing this as one of the regulations to be observed by sheriffs, gives the answer. The execution, being a lien upon the goods from *the time* the same goes into the hands of the sheriff, coroner, under-sheriff, or *other officer*, "*for the better manifestation of the said time*," he shall, upon the receipt of any such writ, endorse, &c.; and if he fail so to endorse the writ, he is liable to a penalty, not exceeding fifteen *per centum* on the amount of the execution, &c.—Clay's Dig. 209, § 41. I do not hesitate to pronounce that it was the intention of the

Legislature to attach the same lien to executions in the hands of agents, as would have attached had they been delivered to sheriffs; and if the intention be clear, I care not for the letter.— Bac. Abr. Stat. I, § 8.

3. But it is argued that if the Legislature designed to make the agent a sheriff *pro hac vice*, the act would be unconstitutional, as it would take from the sheriff, who is required by our constitution to be elected by the people, a portion of his appropriate duties and devolve the same upon an agent appointed by a corporation.   The 24th section of the 4th article of the constitution declares that "a sheriff shall be elected in each county by the qualified electors thereof, who shall hold his office for the term of three years, unless sooner removed." We cannot perceive how authorising the Bank to appoint a general agent, for the transacting of its own business in the State, should conflict with this provision.   This agent is a totally different officer, whose acts, so far as the business of the Bank is concerned, the Legislature has said shall be valid, as if done by the sheriff, and he shall be subject to the same regulations in respect to the business of the Bank, as sheriffs.   It would not be competent for the Legislature to create an officer with the powers and duties of sheriff in the county, to be elected otherwise than by the qualified electors.   The case would then fall within the principle of The People v. Warner, 7 Hill R. 81.   It was certainly never contemplated that the Legislature should be denied the power to authorise persons, other than sheriffs, to exercise some particular duty, which may hitherto have been devolved by law upon those officers.   They cannot abolish his office—they cannot, by the appointment of another officer in a different mode, devolve upon him the duties of sheriff to the exclusion of that officer, thus leaving him a sinecure; but they may say an attorney may serve a notice, which before, the law required to be executed by the sheriff—they may invest a corporation with the power of appointing an agent for the purpose of transacting its own business, although that business may formerly have been done by sheriffs, and that is the case before us.   It may be observed, that the appointment of such agents, and the exercise by them of the prescribed duties, were but cumulative means afforded the banks for the collection of their demands, (which were really due the State, the assets belonging to the State,) and the banks

could have put their process, notwithstanding, in the sheriff's, or coroner's hands, as the case might require. We agree upon the constitutional question.

But an argument from inconvenience is attempted to be deduced, against giving process of execution in the hands of bank agents a lien; for it is said if a lien attaches, it is co-extensive with the State. This may have been, and probably was a good argument for the repeal of the statute, but we think it furnishes no just rule of construction, unless in a doubtful case. That persons could not tell when they might safely buy property, because of a lien, might be an argument against all liens. If it is replied, they could call on the sheriff and ascertain what executions are in his hands, even then they may often be misled, for although he may have none when enquiry is made, yet he may have had one months before, which, when renewed and sent to him, preserves the lien and defeats the sale. The same reply may be made to the argument in regard to the injustice which may sometimes result from such liens, depriving the diligent creditor of the fruits of his diligence, in hunting up property, which is to be taken away from him by older executions. This not unfrequently occurs under executions in the sheriff's hands. In respect to lands, judgments constitute liens co-extensive with the State, and the greatest injustice and hardship are sometimes done to purchasers; as, for example, in the case of the Bank v. Curry, 13 Ala. 304. In that case, Curry bought of Riddle a tract of land at $13,500, without any notice of a lien, and at a time when his vendor was solvent; he made many valuable improvements, costing $1,200; eight years thereafter an execution issued on a judgment, which had slumbered all this time in the Montgomery Circuit Court, and was levied on the land as the property of his vendor, and that too when the vendor had become hopelessly insolvent—Held that the land was liable by virtue of the lien—that it was the duty of the purchaser to beware—to examine, if need be, the dockets and records of every District, Chancery, Circuit, County and Orphans' Court in the State for ten years back, to ascertain if there was no judgment which bound the land—a much more onerous duty than making inquiry of some five bank agents, as to executions which have lately come to their hands. Besides, there is certainly as much reason for deducing this lien from

Andress v. Roberts.

the statutes quoted, as there can be found in our law for the lien of judgments on real estate. So that the fact that hardship may result from the extension of the lien, is, in my judgment, of no weight. The law must lay down fixed and general rules, and these rules cannot yield to the exigencies and hardships of each particular case. We, however, see nothing so unreasonable in extending the lien in favor of the State, and to this extent giving an advantage to the State Bank and Branches in the collection of debts. These advantages are confered on them in giving summary remedies by motion, which were denied to the citizens generally, and we are not prepared to say that the extension of the lien was not in the contemplation of the Legislature in passing this statute. At least, it results from their action on the subject.

Let the judgment be reversed and the cause remanded.

PARSONS, J.—I concur in reversing this judgment, and agree with my brother CHILTON on the constitutionality of the law, authorising the State Bank and Branches to appoint bank agents, but I am of the opinion that the statute of 1807, which limits the lien of executions to commence from the time that such writs may go into the hands of the sheriff, under-sheriff, coroner, or other officer, and the several decisions, which restrict the lien to the county in which the execution may go, do not apply to this case, and must be construed in reference to such officers as then existed by the law. I am inclined to think that it was not the intention of the Legislature, in the creation of this new officer, to take from process of execution in his hands the incident of a lien, and that a lien is neither given nor taken away by the statute of 1843. This being the case, the lien results from the common law, commences from the test of the writ, and is co-extensive with the officer's jurisdiction—that is, extends over the State.

DARGAN, C. J.—The question in this case is, whether the delivery of the execution in favor of the Bank against Beard, to Marsh, the bank agent, created a lien in favor of the Bank upon the goods of the defendant in the execution. At common law, an execution bound the goods of the defendant from its test, but by our statute, the goods are not bound until the

Andress v. Roberts.

delivery of the writ to the sheriff, under-sheriff, coroner, or other officer, to be executed.— Clay's Dig. 208. I cannot bring my mind to the conclusion that by the term, *other officer*, the Legislature intended other than a county officer, who might be appointed by law to execute process in a case where both the sheriff and the coroner were incompetent to do it. This, I think, is the reasonable and fair construction of the act of 1807. We must then look to the act of 1843, by which the State Bank and its branches were authorised to appoint agents to execute process in their favor, and if the lien be not given by this act, it cannot be created at all, by the delivery of an execution to such agent. The language of that act is as follows : " Each of the Banks aforesaid may appoint an agent, who shall have the power to serve notices, subpœnas, attachments, executions, and other process, and shall have the same powers and shall be entitled to the same fees, and shall observe the same regulations, as the existing laws prescribe to sheriffs, and said Banks shall require a bond of such officer with sufficient securities, in the penal sum of not less than ten thousand dollars, faithfully to perform all the duties of his office; which bond may be increased, if necessary, and he shall also be required to subscribe on oath faithfully and honestly to demean himself in his said office." It cannot be pretended that this act creates a lien on the goods of the defendant by the delivery of an execution to the bank agent, *in express words;* if the lien exists at all, it must be by construction, presuming that such must have been the intention of the Legislature. But I am unwilling to indulge that presumption. We know that these bank agents could execute process in any part of the State ; their jurisdiction was confined to no one particular county; and if a lien was created by the delivery of an execution to them, it would bind the goods of the defendant co-extensive with the limits of the State. Such a construction as that would lead to results, which, I do not think, the Legislature intended. For instance, the bank agent might have an execution in his hands in one county, and another creditor may have an execution in the hands of a sheriff of another ; the creditor, whose execution is in the hands of the sheriff, may, by his own diligence and at his own expense, discover property of the defendant and point it out to the sheriff, but the bank agent will then step in and claim the proceeds; thus

the diligence and industry of the creditor will inure to the benefit of the Bank. The case supposed may be the very case at bar; the execution was placed in the hands of Marsh, the bank agent, in Mobile; he never went to the county of Monroe, but as soon as Roberts ascertained that Beard had property in Monroe and caused his execution to be levied on it, then the Bank claimed the benefit of the levy by virtue of their older lien. Such results could never have been contemplated by the Legislature. It is the settled rule of law that the lien of an execution, created by its being delivered to the sheriff, binds only the property of the defendant within the limits of the county to which it is issued, (Pond v. Griffin, 1 Ala. 678,) and I am unwilling to hold that the delivery of execution to an officer will bind the goods of the defendant, wherever situated within the State, unless satisfied that such was the intention of the Legislature. Of this, I cannot be, from the language of act of 1843, under which those agents were appointed. I therefore hold that if the Bank saw fit to put an execution in the hands of their agent, instead of the sheriff of the county, no lien was created on the goods of the defendant, until there was an actual levy, or seizure of the property by him; and thus holding, I think the judgment should be affirmed.