## SHEPPARD v. MELLOY, ET AL.

1. It is not indispensable to the regularity of an execution, issued on a forth-coming bond, that it should affirm on its face, that the bond was forfeited.

2. A discrepancy between the first, and second executions, as to the amount of costs, furnishes no ground for quashing the latter.

3. A difference in the amount of damages, which a first, and second execution, affirm the plaintiff recovered, is such a clerical misprision, as may be amended in the primary court; and when the record ,which shows the variance, and upon which the motion to quash is founded, furnishes the only proper *data* for the correction of the error, it is the duty of the court, *mero motu*, to direct the amendment, and overrule the motion to quash.

4. An execution may include defendants to the judgment, who did not unite in a forthcoming bond, as well as the obligors in the bond, if forfeited. If the execution does not on its face, or by the indorsement of the clerk, show, who were the obligors in the bond, it may be amended by the judgment and forthcoming bond.

5. One of several defendants may replevy property levied on, although his co-defendants do not unite with him in the bond. Whether after a forfeiture, the other defendants could replevy, when their property was levied on, upon an execution on the forfeited bond, *Quere.*

Writ of Error to the Circuit Court of Covington.

A writ of *fieri facias* was issued against the goods and chattels, &c. of Thomas Loyd and Josiah Jones, requiring to be made the sum of three hundred and seventy-seven dollars damages, and fifteen dollars and 18 3-4 cents costs, which the plaintiff in error had recovered against them. This *fi. fa.* was levied by the sheriff of Covington, on a negro boy as the property of Loyd ; thereupon Loyd executed a forthcoming bond, with Melloy as his surety. The condition of

71

this bond recites the *fi. fa.*, as directing to be made the sum of three hundred and seventy-seven dollars, principal, with interest and costs, that it was levied, &c. It is then stipulated by the obligors, that if the principal shall well and truly deliver the slave levied on to the sheriff of, &c., by. &c., or pay and satisfy the debt, and costs, due on the *fi. fa.*, the obligation shall be void.

The sheriff returned this bond forfeited, and thereupon a *fieri facias* was issued against both the defendants in the judgment, and the surety in the bond, requiring to be made the sum of three hundred and seventy-seven dollars and 87 3-4 cents, the amount of damages recovered by the plaintiff, and also nineteen dollars 12 1-2 cents, the costs of suit, &c. This *fi. fa* was levied on cattle as the property of Melloy, and certain real estate as the property of Josiah Jones.

Melloy presented his petition to the judge of the circuit court, in which, after setting forth the foregoing facts, it is stated, that the *fi. fa.* as to Jones, had been superseded by the order of a judge, yet the plaintiff in execution was enforcing it against the petitioner, and alledging the following causes why it should be superseded, viz : 1. The bond is defective as a statute obligation, and no execution can issue thereon. 2. That the last execution is defective, and is not supported by such a judgment as it described. 3. That it should show the forthcoming bond had been forfeited—that is, so returned. 4. Petitioner is merely a surety for Loyd, was himself a co-surety with Jones for one Fleming ; he should only be chargeable with one-half of the amount of the execution ; consequently the *supersedeas* granted to Jones should suspend the operation as to a moiety of the sum required to be made.

A *supersedeas* was granted, arresting the action of the execution *in toto ;* and afterwards, on motion, the execution was quashed, for the reasons as stated in the judgment entry, that the forthcoming bond did not conform to the statute, and there was no such judgment as is described in the execution ; and thereupon a judgment was rendered against the plaintiff for costs.

E. W. Peck, for the plaintiff in error, insisted that the

bond substantially conformed to the statute, and this was sufficient. [Anderson v. Rhea, 7 Ala. Rep. 104.]

T. H. Watts, for the defendant in error, made the following points. 1. The execution was defective, because it was not supported by such a judgment as it described. 2. The bond is so indefinite, that it does not identify the execution: it does not state who was the plaintiff in execution, and is in other respects uncertain. [Lunsford, et al. v. Richardson & O'Neal, 5¾Ala. Rep. 618; Rhea v. Anderson, 7 Ala. Rep. 104.] 3. The execution should not have issued against all the parties to the original judgment, unless they had all joined in making the bond. [Clay's Dig. 215, § 71, 73; Land v. Hopkins, 4 Ala. Rep. 427.]

COLLIER, C. J.—We will consider this case upon the hypothesis, that the objections to the execution, as stated in the petition for a *supersedeas*, are all supported by the record. The forthcoming bond is certainly not drawn with technical accuracy, but it contains all the substantial requisites of the law. It describes the execution by the parties to it, the amount required to be made, the court from which it issued, the property levied on, and stipulates for its delivery to the sheriff on the next regular sale day, at the hour of twelve o'clock. The property of but one of the defendants in the *fi. fa.* was levied on, and the bond only executed by him and a surety. In all this there is no irregularity. The execution is sufficiently identified by the description of it in the bond, and it is certainly the right of one of several defendants whose property is seized under a *fi. fa.* to replevy it, although his codefendant does not unite with him in executing a bond. [Clay's Dig. 215, § 71.]

It is not indispensable to the regularity of an execution issued on a forthcoming bond, that it should affirm on its face that the bond was forfeited, though to have authorized it to issue, the proper officer should have made such a return. [Clay's Dig. 215, § 73.]

The execution in question differs from that under which the bond was taken, both in the amount of damages and costs which it requires to be made; the former states the re-

covery of the plaintiff to be $377 87 3-4 damages, and $19 12 1-2 costs; while the latter states the damages to be $377 damages, and $15 18 3-4 costs. As it respects the costs, the discrepancy between the first and second executions furnishes no ground for quashing the latter. We know that according to our practice, the judgment is not rendered for any definite sum as costs, but merely that the successful party recover of the other his costs, which are afterwards to be taxed by the clerk of the court; and upon this taxation the execution issues. This being the case, where successive executions issue upon the same judgment, the last must of course require the collection of a larger amount of costs than the first—these are increased according to the magnitude of the debt or damages required to be made, or the service performed by him to whom the execution was entrusted. So that the judgment in respect to the amount of the costs is not fixed, but changes with each renewal of the execution—opening to receive the addition. If the execution requires more costs to be collected than the defendant is liable to pay, it is not for that cause voidable in other respects. It has accordingly been held, and may be considered the settled law in this State, that when too much costs be taxed on an execution, it will not be quashed, but they will be retaxed on motion. [2 Stew. R. 228; Walton v. Brashears, 4 Bibb's R. 18.]

In regard to the difference in the amount of the damages which the first and second *fi. fa.* affirm the plaintiff recovered, we think it is such a clerical misprision as may be amended by the primary court. Cawthorn v. Knight, at the last term, is an authority in point, and perhaps goes quite beyond what the present case requires us to decide. There the name of an individual was inserted as a defendant in the execution, who was not a party to the decree of the orphans' court on which it issued. Without considering whether the case was embraced by the statutes of amendment, we thought the cases cited furnished an ample warrant for striking out the name of the improper party; that the powers of courts over their process, independent of legislation, are sufficiently expansive to embrace such an authority: especially where the record contained the *data* by which to amend. In the opinion pronounced, we cite many decisions which support

Sheppard v. Melloy, et al.

not only the conclusion, but the reasoning employed by us. Among other things, it was said: " 'The amount of the judgment stated in the execution may be amended. [2 T. Rep. 737; 5 Johns. Rep. 100.] A misnomer on a *ca. sa.* has been amended after it has been executed, (Barnes' Notes, 10 ; 4 Taunt. Rep. 322); and even one of the names of the plaintiffs has been stricken out. [2 T. Rep. 737.] And an amendment has been allowed so as to make the amount agree with the judgment where it is variant. [1 Chitty's Rep. 349."] In Johnston v. Lynch and Adair, 3 Bibb's Rep. 334, the sheriff was required to make upon a *fieri facias*, a larger amount of some of the defendants than they were liable to pay ; and the question was, whether the irregularity was amendable, or entirely vitiated the execution. The court said, it was true that according to the strict ancient rules of the common law, errors in the process were not amendable ; but by various statutes and adjudications of more modern date, the rule is now incontrovertibly settled, that errors, occasioned by clerical misprisions, where there exists any thing in the record to amend by, will be amended. And this will be done whether the error exists in the proceedings before or after judgment. It was added, that the error in the excess complained of in the execution was a clerical misprision, and that there was enough shown in the record by which the amendment could be made. See also, Kentucky Ins. Co. v. Sanders, 4 Bibb's Rep. 471 ; Jackson v. Pratt, 10 Johns. Rep. 392 ; Printed Dec. (Ky.) 170, 173, 175, 208, 218, 249 ; Bissell v. Kip, 3 Johns, Rep. 89 to 100, and cases there cited, both in the opinion of the court and in the argument at the bar ; McKonker v. Glen, 1 Cow. Rep. 141 ; Inman v. Griswold, Id. 199 ; Jackson v. Walker, 4 Wend. Rep. 462, Jackson v. Anderson, Id. 474 ; Borland v. Stewart, Id. 568 ; Porter v. Goodman, Id. 413. We need not add to these citations ; for what was said in Cawthorn v. Knight, *supra*, sufficiently indicates our opinion that an amendment would be allowable in the present case, so as to make the execution conform in the amount of damages to the judgment described in the forthcoming bond.

We cannot think it was necessary for the plaintiff in execution to have submitted a distinct motion to the court for

leave to amend the *fi. fa.* If the authority to allow the a-mendment appeared by extrinsic proof, then the motion should have been made, and the proof adduced. But when the record which shows the variance, and upon which the motion to quash was founded, furnished the only proper *data* for the correction of the error, it was the duty of the court *mero motu,* to have directed the amendment of the execution, and over-ruled the motion to quash.

In Hopkins v. Land, 4 Ala. Rep. 427, it was held, that a " forthcoming bond was not an extinguishment of the judg-ment; and that the plaintiff, at his election, may sue out an execution on it, or have his execution against the sureties to the bond, as well as against all the defendants." We can perceive no objection in embracing the defendants to the judgment, and the obligors in the bond, in the same execu-tion, although all the defendants did not unite in executing the delivery bond; especially where, as in this case, the ex-cution indicates upon its face, or the indorsement of the clerk, who were the obligors in the bond. And, even if the execution did not show in what character the defendants were bound to satisfy it, we are inclined to think, it would not be a fatal objection to it upon a motion to quash ; but if material, it should be amended by the judgment and forth-coming bond. Whether it would be competent for one of several defendants, after the forfeiture by his co-defendant of a bond in which he did not unite, when his property was levied on under a *fi. fa.* embracing all the defendants in the original judgment, and obligors in the delivery bond, to re-plevy the same upon executing the statute bond, is a ques-tion upon which we express no opinion.

The judgment quashing the execution, affirms nothing in respect to a *supersedeas* having been previously granted at the instance of Jones; we cannot therefore assume that the fact was proved. But if it were, does it necessarily follow that the execution is voidable even as to him; and if it be so, as the plaintiff might have sued out execution against Loyd and Melloy alone, the obligors in the forthcoming bond, the name of Jones might be stricken out, and it would be good as to them. Although Jones and Loyd may have been

the sureties of Fleming, for the debt on which the judgment is rendered, as between themselves and the plaintiff, they are each liable to pay it *in toto.*

We have noticed each of the points made by the defendant in favor of the decision of the court below, and our conclusion is, that the judgment must be reversed, and the *supersedeas* dismissed.