## DELOACH *vs.* THE STATE BANK.

[TRESPASS TO TRY TITLES TO LAND BY PURCHASER AT SHERIFF'S SALE.]

1. *Fi. fa. on void delivery bond amendable.*—A *fi. fa.*, issued on a void delivery bond, against the defendants in the judgment and their surety on the bond, if it correctly describes the judgment, by its date, amount, and names of parties, is neither void nor voidable as to the defendants in the judgment, but may be amended by striking out the name of their surety on the bond.

2. *Sheriff's sale void for uncertain description of land.*—A sale under execution of two hundred and forty acres of land, out of a tract containing two hundred and eighty acres in a single body, when there is no description or other means of distinguishing the portion levied on and sold from the residue of the tract, is void for uncertainty and indefiniteness of description.

APPEAL from the Circuit Court of Choctaw.
Tried before the Hon. C. W. RAPIER.

This action was brought by the appellee against James M. Deloach, to recover the south-east quarter and the south-east quarter of the north-east quarter of section twenty-eight, the north-east quarter of the north-west quarter and the north-west quarter of the north-east quarter of section thirty-three, in township fifteen, range two west; both parties deriving title under purchases at sheriff's sales under execution against West Neal.

The plaintiff's judgment was rendered at the July term, 1841, of the County Court of Tuskaloosa, against Robert Hill, Richard J. Painter, and West Neal, for $466 debt, $78 47 damages, and costs; and the costs taxed in the first execution were $6 93¾, making a total of $551 40¾. On this judgment an execution was issued on the 20th August, 1841, returnable on the first Monday in February, 1842; on which the sheriff of Sumter made the following return : "Levied 22d December, 1841, and bond taken for the delivery of the property on first Monday in January, 1842." The delivery bond, as set out in the record, is in the penalty of $738 64; and the condition recites an execution against "Robert Hill and West Neal for $568 32, including debt, damages, and costs, bearing test the 26th day of July, 1841, which was levied on a negro woman Nell, as the property of the said West Neal"; and then stipulates, "that if the said Hill and Neal shall deliver said property," &c. This bond is signed by Robert Hill, West Neal, and Jesse Hill; and on it is endorsed the word "forfeited", but without date or signature. On this bond, as forfeited, the clerk issued an execution on the 10th January, 1842, which, as he certifies, was never returned, and is not on file in his office; and afterwards several other executions were issued, which may be thus described : An *alias*, on the 6th May, 1842, against Robert Hill, Richard J. Painter, West Neal, and Jesse Hill, describing the judgment correctly; a *pluries*, on the 11th July, 1842, against the same parties; and an *alias pluries*, on the 8th May, 1843, against the same parties, and describing the judgment correctly. This last execution was returned by M. E. Gary, as sheriff of Sumter county, "Levied the 12th July, 1843", on certain lands, which are particularly described, as the property of Robert Hill; "*also, two hundred and forty acres of Neal's*

*property, numbers not known."* Afterwards, on the 10th August, 1843, a *venditioni exponas* was issued for the sale of these lands, describing Neal's lands as " *two hundred and forty acres of land as the property of West Neal, numbers not known."* Under this process, said M. E. Gary, whose official term of office expired on the 18th August, 1843, sold said lands on the first Monday in September next thereafter ; and the plaintiff became the purchaser of Neal's lands, at $3 60, and received the sheriff's deed for the same, in which they are described as "two hundred and forty acres of land, as the property of West Neal, numbers not known, *being the tract of land on which said Neal now resides, lying and being in the county of Sumter and State aforesaid, and in the Demopolis land district."*

"Plaintiff also introduced copies of patents from the United States to said West Neal, for the north half of the southeast quarter of section twenty-eight, and of the south-east quarter of the north-east quarter of said section, in township fifteen, range two west ; also, copies of other patents to one Robert M. Williams, for said south-east quarter of section twenty-eight, and the north-west quarter of the north-east quarter of section thirty-three, in the same township and range ; and then proved that, on the death of said Williams, a partition of said lands was had between said West Neal and Mary Williams, in which the two last above-mentioned parcels of lands passed to said West Neal ; all of which patents and proceedings were of a date several years before said sheriff's sale. Plaintiff then introduced the deposition of said Mary Williams, to whom, by the said partition, among other parcels of land, was allotted the north-east quarter of the north-west quarter of said section thirty-three." In this deposition, the witness testifies, that in December, 1839, she sold said north-east quarter of the north-west quarter of section thirty-three to West Neal, and that in August, 1842, she executed to said Neal a power of attorney, authorizing him to sell her other lands in Sumter county ; and she appends to her deposition copies of both these papers. "This deed," as the bill of exceptions states, "was not recorded, nor was the original produced ; but a predicate was laid for the introduction of the secondary evidence."

" In reference to the possession of the land, the proof was,

that West Neal, at the time of said sale by the sheriff, and for some years before, had a house and had been residing with his family on the south-east quarter of section twenty-eight, and had two fields of about eighteen acres together on the tract,—one of twelve acres on the said south-east quarter, and another of six acres in the swamp; that the rest of the tract was woodland, unfenced and lying out, but claimed and conceded by the neighbors to be the property of Neal. Whether the tract so claimed by Neal, and which was composed of the aforesaid parcels of land, or a part of them, contained two hundred and forty acres or two hundred and eighty acres, two of the witnesses said they did not know, and the others did not testify about; but they knew of no other land in the county belonging to West Neal, or claimed by him as his. There was further evidence, by one Coleman, who was a deputy sheriff in the fall and winter of 1843, that when the execution in favor of Walker, for the use of Jarrell, against said West Neal, under which the defendant claimed title, was in his (Coleman's) hands as such deputy sheriff, Jarrell, who was one of said Neal's neighbors, gave him the numbers of Neal's lands, correcting in part the erroneous numbers by which the sheriff had described said lands in his first endorsement of a levy on said writ; and that Jarrell said, in the same conversation, 'he knew this land had been sold by the sheriff under the Bank executions, and had been purchased by the Bank, but that it was worth enough to pay both the Bank and him, and his only chance to get his money was to work his execution in upon the same land, and if it came to the worst the land was worth both debts.'

"The defendant derived title, as to two hundred and forty acres of the land sued for, from one Reynolds, who purchased at the sheriff's sale under the execution in favor of Walker, for the use of Jarrell, against West Neal; and as to the other forty acres, being the north-east quarter of the north-west quarter of said section thirty-three, his title was a deed, dated January 9, 1847, executed by said West Neal, as agent and attorney in fact of said Mary Williams, under the power of attorney mentioned in her deposition; this being the same tract which she had sold to said Neal in 1839. Further notice of his title is unnecessary.

" The court charged the jury, among other things, that the sheriff's sale to the Bank, in 1843, was not void because of uncertainty and indefiniteness of the description in the levy and deed ; and stated, that if West Neal, the defendant in the execution, at the time of levy and sale, had title to and resided upon a tract containing as much as two hundred and eighty acres, rather than hold the sale void because of the uncertainty as to what portion of the tract the two hundred and forty acres mentioned in the levy and deed were to apply, it would be held that the sale conveyed the whole tract. But this charge the court modified, at the suggestion of the plaintiff's counsel, in this wise, and gave instead thereof the following : That the court could not pronounce the sheriff's sale and deed to be void for indefiniteness of description ; but if the jury found from the evidence that Neal, at the time of the levy and sale, had a good title to and resided upon a tract of land in the county containing about two hundred and forty acres, and generally known as his, and it was not known that he had any other lands, then the sheriff's sale and deed would convey such two hundred and forty acre tract.

" The court further charged the jury, that plaintiff conceded it had no right to recover that portion of the land mentioned in the declaration which had been conveyed to the defendant by Neal, as attorney for Mary Williams ; and consequently, as to that portion, they must find for the defendant."

To each of these charges the defendant excepted, and then asked the court to give several charges, of which the fourth was in these words : " 4. That if the jury believe that Neal owned two hundred and eighty acres in a body, then they cannot tell which two hundred and forty were sold ; and if so, they cannot find anything." The court refused to give this charge, and the defendant excepted to the refusal.

The charges given, and the refusal to charge as requested, are now assigned for error.

R. H. SMITH and THOS. H. HERNDON, for appellant :

Since the plaintiff below derived title to the land under a sheriff's sale, it was necessary for it to show a judgment, execution thereon, levy, and sheriff's deed, each connected with and identifying the other.—Ware v. Bradford, 2 Ala. 682.

1. The execution, under which the land in controversy was sold, issued on a pretended forthcoming bond, which, it is contended, could not support an execution. The authority given to a clerk to issue an execution on a forfeited forthcoming bond, is a statutory power in derogation of the common law, and the requisitions of the statute must be strictly complied with. The party to be affected thereby has no day in court, nor will a writ of error lie to reverse the *quasi* judgment thus arbitrarily obtained. Where the bond does not identify the execution upon which it purports to be founded, the execution is void, and a sale under it confers no title.—Lunsford v. Richardson & O'Neal, 5 Ala. 618; Nicolson v. Burke, 15 *ib.* 353; 11 *ib.* 618; 7 *ib.* 593; 3 *ib.* 484; 1 *ib.* 317; 11 Humph. 189; 5 Dana, 278; 4 Dev. & Bat. 420; 5 Texas, 290; Watson on Sheriffs, 212.

2. But, if the bond had been good and valid, still no execution could have issued upon it, because it was not returned as required by statute. There was no endorsement at all on the execution, and the word "forfeited" only, without the sheriff's signature, on the bond.—Watson on Sheriffs, 69; Minor's R. 15; 1 Stew. 10.

3. The levy was too uncertain and indefinite to pass any title under the sale by the sheriff, and he could not validate it by a superadded description in his deed.—Borden v. Smith, 3 Dev. & Bat. 37; Huggins v. Ketchum, 4 *ib.* 414; 7 Blackf. 199; Fenwick v. Floyd's Lessee, 1 Har. & G. 171; 4 McLean, 329; Jackson v. Rosevelt, 13 Johns. 97; Jackson v. DeLancy, *ib.* 536; 11 Barb. 172; 10 Humph. 44; 3 *ib.* 629; 2 Caines, 66; 3 Yerg. 171, 338; 8 Missouri R. 197; 10 Geo. 74; 11 Ired. 375; 2 Greenl. Cruise, p. 48, § 35.

A. R. MANNING, *contra*, made the following points :—

1. The delivery bond was sufficiently identified with the judgment and execution. It was offered in evidence as a part of the record of the case, and no motion was made to suppress it. Its dates exactly correspond with the dates in the sheriff's return; and the amount of the judgment, including the sheriff's commissions, makes, within a fraction of one dollar, the amount stated in the bond as that of the execution, "including debt, damages, and costs." As the parties to that case

never moved to quash the bond, execution, or sheriff's deed, as not pertaining to it, can a stranger be heard to make the objection in this collateral way ?—Fournier v. Curry, 4 Ala. 321.

2. But the judgment, and not the bond, is the foundation of the plaintiff's title; and, even if the bond be void, the execution may be amended by striking out the name of the surety. Sheppard v. Melloy, 12 Ala. 561; Campbell v. Spence, 4 *ib.* 543; Cawthorn v. Knight, 11 *ib.* 579; McCollum v. Hubbert, 13 *ib.* 282 ; Thompson v. King, 15 *ib.* 341; Andress v. Roberts, 18 *ib.* 338 ; Chambers v. Stone, 9 *ib.* 260.

3. It is not essential that the sheriff should endorse on the execution a particular description of the land levied on, or even that he had levied at all.—Forrest & Lyon v. Camp, 16 Ala. 647–8; Love v. Powell, 5 *ib.* 58; Driver v. Spence, 1 *ib.* 540. A purchaser at execution sale cannot be affected by any irregularities of the sheriff, either in not giving the notice required, or in the return made on the execution.—Same authorities. The return is generally, and indeed necessarily, brief ; and the description in the *vend. ex.* cannot be more extended than the return. The officer who made the levy knows what property he levied on, and is expected to describe it more at length in the advertisement, proclamation at the time of sale, and deed to the purchaser ; and hence it is that deficiencies in the endorsement of the levy may be supplied and corrected by the sheriff's deed.—Hopping v. Burnam, 2 Greene's (Iowa) R. 39 ; Helms v. Alexander, 10 Humph. ; Webb v. Bumpass, 9 Port. 203. If the defendant in execution is in danger of injury, he can avoid it by motion to the court, either before or after the sale ; but if he acquiesces in the sale, certainly it cannot be set aside upon collateral impeachment by a stranger.

4. That the description of the land in the sheriff's deed is sufficient, is not controverted. "The tract of land on which said Neal now resides" could be as easily identified and proved by evidence outside of the deed, as the lands of the estate of Mt. Vernon, if the owner should sell them by that designation.—Randolph v. Carlton, 8 Ala. 606 ; Webb v. Bumpass, 9 Port. 201 ; Jackson v. Jackson, 13 Ired. 159.

CHILTON, C. J.—It may be conceded, in this case, that

the delivery bond, on which the execution purports to have issued, is utterly void, and that the execution, so far as it depends on it for validity, is of no force ; and yet the concession avails the appellant nothing, for the reason, that the execution is amendable. It sets forth the true amounts of judgment, damages and cost, and the parties to the same, as well as the date of the rendition of said judgment ; and commands the officer to levy these sums of property of the defendants, all of whom are properly named, except the surety upon the bond, whose name may be stricken out. Being thus specific, it may well be amended, and rest upon the judgment, although the bond be cast aside.—Cawthorn v. Knight, 11 Ala. 572 ; McCollum v. Hubbert, 13 ib. 282. Although a wrong name is introduced upon the face of the execution, this should not vitiate the process, as to the parties against whom it should and does properly issue. It would be erroneous to quash it for such defect.—Sheppard v. Melloy, 12 Ala. 561 ; Thompson v. King, 15 ib. 341. We conclude, therefore, that the execution, purporting· to be issued as well against the surety on the delivery bond as against the defendants to the judgment, is, as to West, whose land was levied on, and who was one of the judgment debtors, neither void nor voidable, but valid and effectual, conferring upon the sheriff full power to make the levy.

The view which we take of this case renders it unnecessary for us to discuss the validity of the levy as endorsed upon the process. The proof clearly conduced to show that, at the time of the levy and sale, the tract of land owned by West Neal, and on which he then resided, embraced two hundred and eighty acres. Two hundred and forty of these were levied upon and.sold ; but no data are furnished, either by the deed or the parol proof, by which it may be determined what land was sold. The quantity to be taken from the tract is given ; but out of what part of the tract it is to be taken, it is impossible to determine. This uncertainty could not be remedied by the subsequent sale of forty acres by Neal, as the agent of Miss Williams ; nor by the concession made by the plaintiff's counsel, that the forty acre tract thus sold was not sought to be recovered. We must look to the tract as it existed when sold. It then belonged to Neal,—lay in one body, and con-

sisted, as we have said, of two hundred and eighty acres; so that the question of uncertainty as to the land sold still recurs.

The rule, which forbids the sheriff to sell any land which the creditor cannot enable him to designate with reasonable certainty, meets our entire approbation. It is required as well to prevent the sacrifice of real estate, by enabling bidders to know what they are buying, as to prevent frauds and speculation in such sales.—Jackson v. De Lancy, 13 Johns. R. 536. The fourth charge which was asked by the counsel for the defendant below, and refused by the court, distinctly presented the question, whether a sale by the sheriff of two hundred and forty acres, out of a tract of two hundred and eighty acres, and which afforded no means of distinguishing the land sold from the portion not sold, could be supported. The charge was, " that if the jury believed that Neal owned two hundred and eighty acres in a body, they could not tell which two hundred and forty acres were sold; and if so, they should not find anything." Applying this charge to the evidence, we think it was correct, and should have been given.

As this point must reverse the case, and will probably be decisive of it upon another trial, we deem it unnecessary to notice the other questions raised by the assignment of errors.

Judgment reversed, and cause remanded.