## HOPKINS v. LAND.

1. In general it is irregular to sue out a second execution when a sufficient levy has been made which remains undisposed of, in consequence of a forthcoming bond; but such a bond is not a satisfaction of the judgment, and if the condition is broken, the plaintiff may sue out a new execution on the judgment, or against the defendants to the same and the sureties on the bond. *Quere*, how far the lien of the judgment or first execution is continued or destroyed.

2. By statute, a plaintiff is authorized to sue out more executions than one, but at his own cost; whenever therefore a forthcoming bond is forfeited and it is necessary to run executions to different counties, he may sue out one execution against the defendants to the judgment, and another against them and the sureties to the bond.

WRIT of Error to the Circuit Court of Sumter county.

Action of trespass, under the statute to try title. Verdict and judgment in favor of the defendant.

At the trial the plaintiff read in evidence a judgment obtained at the October term, 1837, of said Court, by Isaac C. Snedicor against Cornelius Rain, for $712 96. This judgment was superseded by writ of error, and was affirmed at the June term, 1838, of this Court, against Rain, and judgment also given against William Johnson and Cleaveland Robb, his securities on the writ of error bond. A writ of *fi. fa.* issued on this affirmed judgment against all the defendants to it, on the 15th April, 1839, which on the same day was received by the sheriff of Sumter.

This writ was endorsed by the Clerk that a *fi. fa.* on the same judgment, on a forfeited forthcoming bond issued the same day to Mobile county; and the payment of that would be a supersedeas to the one thus indorsed. The writ to Sumter county was levied on the tenements sued for, and under which they were sold as the property of Cleaveland Robb, on the 5th of August, 1839, to the plaintiff. It was also in evidence that Robb lived in Sumter county, and Rain and Johnson in Mobile. The plaintiff then offered to read the sheriff's deed for the premises sued for, and purchased under said execution. The defendant objected to the reading of this deed, and

showed that an execution was issued on the 5th of March, 1839, on the affirmed judgment against Rain, Robb and Johnson, which was received by the sheriff of Mobile county on the 11th of the same month, and on the 23d levied on fifteen head of horses and two coaches, and other property, as the property of Rain, for which a forthcoming bond was taken from Rain, with one Maxwell as security; this was returned "forfeited," with the execution. After the return of this execution, another was sued out against Rain, Maxwell, Robb, and Johnson, on the same day as that under which the sale was made of the premises sued for, and was indorsed that it was sued on a forthcoming bond, and therefore no security of any kind should be taken.

The sheriff of Mobile returned to this execution that he had levied the same on the 19th April, 1839, on two slaves as the property of Johnson; that the same, on the 6th May, were claimed by one Walker, trustee of Mrs. Johnson, and the sale forbid; that the plaintiff was apprised by the sheriff that the slaves were claimed and indemnity required; and that this being refused the slaves were released.

The Court sustained the objection to reading the deed, and the plaintiff excepted.

SMITH, for the plaintiff in error, insisted that the exclusion of the deed was erroneous, because, under the statute, [Digest, 159, 160,] the plaintiff is permitted to sue out two executions at the same time, to different counties. Having this right, the omission to insert the name of Maxwell, the security of Rain to the forthcoming bond, was at most an irregularity, which ought not to avoid the sale. [Boren v. McGehee, 6 Por. 432.] At all events the regularity of the sale cannot be collaterally impeached. [Campbell v. Wyman, 6 Porter, 219 ; University v. Keller, 1 Ala. Rep. N. S. 406.]

HAIR, contra, contended that by the levy of the first _fi. fa._ on property sufficient to pay the debt, the judgment was discharged—a new security, provided by the statute, was given to the plaintiff, and the old securities discharged.

Independent of this, the forthcoming bond having been returned forfeited, the judgment became merged, and no execu-

Hopkins v. Land.

tion could properly issue on it. [Tucker's Comm. 360, 361; 3 Rand. 490; Bondurant v. Buford, 1 Ala. Rep. N. S. 357; 2 Howard, 853; 5 Howard, 235, 677.]

GOLDTHWAITE, J.—1. It would be very difficult to distinguish the principle which ought to govern this case, from that decided in Boren v. McGehee. [6 Porter, 432,] even if we conceded that the levy under the first *fieri facias*, with the execution of the forthcoming bond by Rain, was a satisfaction of the judgment; but as the principle contended for by the defendant, if correct, is one of extensive bearing, we shall give it our consideration.

It may be admitted, that in general, it is irregular to sue out a second execution when a sufficient levy has been previously made, and remains undisposed of; but such is not the matter now to be examined, for in this case it appears that the levy was ineffectual, in consequence of the forfeiture of the condition of the forthcoming bond. Our statutes, though different in some respects from the enactments in Virginia and Mississippi, have the same general objects in view; it not unfrequently happens, however, that different constructions grow up in different States under statutes very similar.

When these regulate the course of proceedings in Courts, and do not effect the end to be attained, the reason for the difference of construction is sometimes found in the fact that the course of proceeding is intimately interwoven or otherwise connected with other matters of practice merely. In the States we have named, the practice seems to have prevailed of considering forthcoming bonds as a satisfaction and consequently an extinguishment of the judgment. Although in Virginia it never has been decided, so far as we can ascertain, that the judgment is merged in the bond, yet, from some expressions dropped by the Judges in the earliest cases, the practice has subsequently prevailed of compelling the plaintiff either to set aside the forthcoming bond, if defective, or to move for judgment on it if regular. [Taylor v. Dundas, 1 Wash. 92; Downman v. Chinn, 2 id. 189; Randolph v. Randolph, 3 Rand. 490.] In the latter case, however, the Judges, whilst they admit the practice as stated, deny that the bond is in law either a satisfaction or a discharge. The Courts of Mississippi seem to have

adopted the Virginia practice, as their statute is, in substance, a transcript of that of the other State. It may also be remarked that the decisions of the Courts of Kentucky are founded on the Virginia statute, and consequently merely pursue the rules supposed to be indicated in the cases reported by Judge Washington.

Formerly our legislation on this subject was very similar to that of Virginia, and it was then necessary to move for judgment an a forfeited forthcoming bond, [Laws of Ala. 296, §9,] but this was changed in 1812, and the plaintiff was permitted to sue out execution on the bond without the formality of a judgment. Before entering upon the examination of our own statute, it is proper to observe that this mode of giving a summary effect to bonds, has been extended to a large class of cases and with respect to them the decisions of our courts have been general, that writs of error will not lie to set aside the execution; but it has uniformly been held that errors can be reached by *supersedeas* only. Whether important questions with respect to liens created by these bonds, or the executions issued on them, are matters with which, at present, we have no concern.

Our statute, after declaring it to be the duty of the sheriff to permit the property levied on to remain with the defendant, when a proper bond is executed, directs, on the forfeiture of the condition, that it shall be the duty of the sheriff, &c. to return the bond and execution within ten days thereafter, to the Clerk of the Court, with the necessary indorsement thereon, of forfeiture. It then directs that the Clerk, within five days afterwards shall issue execution thereon against all the obligors therein; on this execution he is to indorse that no security of any kind is to be taken. [Dig. 171, §64, 66.]

The practice under this statute is believed to be to permit any defendant to enter into the bond, and to issue the execution against all the defendants, together with the sureties executing the bond. Now if the Virginia decisions were to give the rule, it is obvious, either that all the defendants must join in the bond, though one only is affected by the levy; or that the plaintiff will lose his remedy against some of the defendants if one only is allowed to give the bond.

This seems unreasonable, and we prefer to adhere to what

is believed to be the established practice of our State; and this the rather, because we think that the practice is entirely consonant to reason, and well supported by all the analogies of the law.

It never has been pretended that the rights of the plaintiff are affected by the bond, (we again exclude the questions of lien,) when its condition has been complied with; and we cannot perceive why a non-compliance should impose the hardship of resorting to a new remedy. The defendant, when the condition of the bond is not performed, has received all the benefit, and more, that the statute intended to confer on him.

The bond, however, remains for the indemnity of the plaintiff, and although a summary remedy is given to him, there seems to be no reason why he may not waive it if he will. If the defendants are not prejudiced, they ought not to complain. Such are the reasons which induce us to conclude that the bond is not an extinguishment of the judgment; and that the *plaintiff*, at his election, may sue out an execution on it, or have his execution against the sureties to the bond as well as against all the defendants. This view shows that the execution under which the land was sold was regular, it being within the election just adverted to.

But it may be said that the election was before made to take out execution upon the bond, and consequently as the second execution after the forfeiture of the bond, did not follow the election, that was void. This, however, is not the case, for our statutes authorize the plaintiff to sue out more executions than one, at his own cost. [Digest, 159, §2.] When more executions than one are issued, they each are independent of any other, and if one is irregular it cannot have the effect to avoid one that is good; but we do not conceive it at all necessary that the plaintiff should continue his execution on the bond, if from any cause he chooses to cease his pursuit of the sureties. The bond is not made a judgment by the terms of the statute, and it would be exceedingly pernicious if the plaintiff, after ascertaining the bond was defective as a statutory bond, should not be permitted to pursue his judgment, because he has inadvertantly omitted to examine the defective bond. From the facts stated, we are satisfied that neither execution is shown to be irregular.

It seems scarcely necessary again to repeat, that we have purposely omitted all examination or consideration of any questions affecting the continuance or discharge of the general lien of the judgment or execution.

Let the judgment be reversed and the cause remanded.