## BRANCH BANK AT MONTGOMERY v. CURRY.

1. The levy of an execution on personal property, and the taking a forthcoming bond by the sheriff, does not affect the *lien* of the judgment, on the land of the defendants, though the bond be forfeited. Nor is the *lien* of the judgment affected, by the omission of the sheriff to return the forthcoming bond forfeited, or by his failure to return the execution.
2. An innocent purchaser of land, affected by a judgment *lien,* has an equitable right, to be paid for improvements made upon the land.

Writ of Error to the Court of Chancery for the 40th District, Northern Division. Before the Hon. W. W. Mason, Chancellor.

WILLIAM CURRY, the defendant in error, filed his bill in the court of chancery, against the Branch of the Bank of the State of Alabama at Montgomery, alledging, that on the 16th of August, 1837, he purchased of Gideon Riddle, a tract of land, being section nine, township eighteen, range six, east, in the Coosa land district, except five acres, which had been previously sold by Riddle, and which complainant afterwards purchased. That he paid Riddle $13,500, one half in cash, six tenths of the residue in January, 1838, and the balance in 1839. That Riddle executed to him a deed in fee, on the day of the purchase. That complainant took possession of the land, and has made improvement thereon, of the value of ten or twelve thousand dollars. That at the time of his purchase, he had no notice of any *lien* on said land. That on the 27th of June, 1845, an execution issued from the circuit court of Montgomery county, purporting to be issued, on a judgment rendered about the 6th day of March, 1837, in favor of the Branch Bank at Montgomery, against Zimri Madden, Gideon Riddle, and James K. Abercrombie, for the sum of $818, besides costs. That said execution has been levied on the land above described, as the property of Gideon Riddle. That complainant never had notice of said judgment, until after the said *fi. fa.* was placed in the hands of the sheriff. The bill further alledges, that an execution issued on this judgment in the year 1837, and was placed in the hands of William Blythe, sheriff, and was levied on the property of one, or more of the defendants in said execution, of sufficient value to satisfy said judgment. The bill charges, that the said execution never has been returned, and also that at the time of its rendition, and for several years after, the defendants resided in Talladega county, and were possessed of property more than sufficient to pay and satisfy said judgment. But that Madden died in 1840 insolvent; that Riddle is now insolvent, and Abercrombie has removed with his property to Mississippi. The bill also alledges, that an *alias*

execution issued on said judgment in the year 1843, which
has never been returned.   That the bank has used no other
means to coerce the collection of said debt, and that the mo-
ney could have been made out of the property of either of the
defendants to said judgments, during the years 1837, 1838,
or 1839, or if the levy had been made on the land in either
of those years, that complainant could then have saved him-
self from loss.   That the bank has been negligent of her
rights, or has been paid, or made some valid agreement to
postpone the payment of said debt; and that if the land be
now charged with the debt, it will be a loss to the complain-
ant.   The bill contains a prayer, that the bank be enjoined
from proceeding to sell said land under said execution; and
Riddle, Abercrombie, the administrator of Madden, and the
bank, are made defendants to the bill; and that they dis-
cover if said judgment has been paid; or if there has been
any agreement to postpone the collection, and what proceed-
ings have been taken under the *fi. fa.* and levy, made in
1837, on the property of Madden.

The bank answered the bill; admitted the rendition of the
judgment; that an execution issued thereon in 1837, which
has never been returned; also the issuance of a *fi. fa.* in
1843, which was placed in the hands of N. E. Benson, a di-
rector; the issuance of the *fi. fa.* in 1845; and that they
were proceeding to collect the money, by sale of the lands.
Denied that the judgment was paid, or that any agreement
had been entered into, with any of the parties, to postpone
the collection of the debt; and denied all knowledge of the
complainant's purchase, or of the condition of the defendants
in the execution; or of the levy stated to have been made on
the property of Madden.   Riddle also answered the bill, and
admits the purchase as stated in the bill, and that a levy
was made on the goods of Madden in 1837.   The bill was
taken as confessed as to the defendants, Abercrombie and
Blythe.

Many witnesses were examined.   It was proved the com-
plainant purchased the land as alledged, of Riddle, and has
made valuable improvements on it.   The money could have
been made out of the defendants in execution, during the
years 1837, 1838, and probably in 1839.   The sheriff, Blythe,

levied the *fi. fa.* on the goods of Madden in 1837, and took a forthcoming bond for their delivery; the goods were returned to Madden, but were not delivered to the sheriff on the day appointed for sale; there has been no return of the bond, or the execution. Abercrombie has removed from the State, and carried considerable property with him: this was in 1840; Madden died insolvent in 1841, and Riddle is now insolvent. There is no evidence, that the bank had any knowledge of the purchase made by the complainant, or of the condition of the parties to the judgment, or that there was any agreement to postpone the collection of the debt. The chancellor rendered a final decree, perpetually enjoining the bank from selling the land.

L. E. PARSONS, for the plaintiff in error.
S. F. RICE, contra.

DARGAN, J.—Whether there is error in the decree of the chancellor, or not, depends on the question, whether the bank has lost the *lien* created by the judgment, on the land described in the bill.

In the case of Campbell v. Spence, 4 Ala. Rep. 543, this court held, that if an execution be levied on the personal property of the defendant, and a forthcoming bond is taken by the sheriff, the *lien* of the judgment, on the real estate of the defendant, is not thereby lost; and after the forfeiture of the bond, the plaintiff may sue out a new execution on the judgment, if he elect to do so; and that the *lien* of the elder judgment, would not be postponed, in favor of a junior judgment, on the land of the defendant.

And in 8 Ala. Rep. 759, it is said, that if goods are levied on, and a forthcoming bond is taken, which is forfeited; or if they be removed by the defendant, the plaintiff may have a new execution on the judgment. The same principle is recognized in the case of Bumpass v. Welch, 9 Porter, 201. In the case of Hopkins v. Land, 4 Ala. Rep. 427, an execution had been issued on a judgment against three, and levied on the property of one of the defendants, and a forthcoming bond taken, which had been returned forfeited—an *alias* execution was issued on the judgment, and the land of another

defendant, who had not joined in the bond, was sold. Eject-
ment was brought by the purchaser at sheriff sale, and the
defendant insisted, that the judgment was satisfied by reason
of the previous levy, and the forfeiture of the forthcoming
bond. But the court held, that there was no satisfaction of
the judgment, and in the opinion, Judge Goldthwaite says,
"it has never been pretended, that the rights of the plaintiff
are affected by taking a forthcoming bond, if its condition has
been complied with, and we cannot perceive why a non-com-
pliance with the condition, should impose on the plaintiff the
necessity of resorting to a new remedy."

It is true that he expressly waived the consideration of the
question, whether the *lien* was affected by the bond, and the
return of forfeiture; yet it is evident, that if the plaintiff had
a right to an execution on his judgment, notwithstanding the
bond, the *lien* of the judgment was not lost. And in the
case of Campbell v. Spence, which was decided at the next
succeeding term, the question arose, how far the *lien* was af-
fected, or whether the levy, and taking the bond, would
postpone the *lien*, in favor of a *junior* judgment; and it was
held, that the *lien* continued on the land of the defendant,
and that a junior judgment creditor, could not claim priority
in the distribution of the proceeds of the land, by reason of
this levy, and taking the bond for the forthcoming of per-
sonal property.

These authorities are conclusive to show, that the levy of
an execution on personal property, and the taking of a forth-
coming bond, by the sheriff, although the bond be forfeited,
does not affect the *lien* of the judgment, on the land of the
defendants. It is true that a different rule prevails in several
other States, but after the best reflection we have been able
to bestow upon the subject, we would not adopt a different
rule under our statutes, if the question was *res integra*—for
it is made the duty of the sheriff, to take a forthcoming bond
from the defendant, with good security, and to let the pro-
perty remain with him; this is for his convenience and ben-
efit. If there are several defendants, and the levy is made
on the property of one, he has the right to replevy by giving
bond, although his co-defendants do not join in it. 4 Ala.
Rep. 427. And it would seem inconsistent with the general

principles of law, that one defendant, without actual payment, could discharge a co-defendant without the concurrence of the plaintiff, by giving a new security. If we hold that the *lien* of the judgment is lost by a levy, and the giving of a forthcoming bond, it must be on the ground alone, of the satisfaction of the judgment; and if we say the judgment is satisfied, by the forthcoming bond being forfeited, then a co-defendant may be discharged, after execution, by the lawful act of the sheriff and one of the defendants, without even the knowledge or consent of the plaintiff.

Other apparent hardships could be suggested, that would follow, from holding that the levy on personal property, and the taking a bond, would discharge the *lien.* Suppose a levy was made on a "slave of one defendant, and a forthcoming bond given : on the day of sale he is delivered, but from disease intervening between the levy and the sale, he brings little or nothing. The bond however is complied with, and if the bond discharges the *lien,* the land of the co-defendant, *aliened* in the interim between the levy and sale, is discharged from the *debt.* And thus it may be lost, not by any *laches* of the plaintiff, but simply because the sheriff has done, what he is bound to do ; and the defendant has exercised his legal right, given by statute. The rule adopted by this court, holding that a levy, and the taking of a forthcoming bond, does not discharge the *lien* of the judgment, we think appropriate, and correct under our statutes, and the settled practice that has grown up under them.

2. The *lien* of the judgment is not affected, because the sheriff has failed to return the bond forfeited, and also failed to return the execution, and we are not under the evidence, authorized to presume it has been paid. By statute, the plaintiff may sue out another execution, although the first is not returned. Clay's Dig. 201; 4 Ala. Rep. 427. And although his failure to discharge his duty, has subjected him to an action, this failure of the sheriff does not impair the rights of the plaintiff, against the defendants in the judgment. See 4 Ala. Rep. 543 ; 9 Porter, 201. The complainant, it is true, has paid a full price for the land, and purchased in good faith ; but on the day of his purchase, the land was charged by law with the payment of this debt. Has the plaintiff in

error done any act, that will amount to a forfeiture of the *lien?* The bank has remained passive merely; it does not appear it had notice of the purchase by the complainant, and probably did not know of their rights against the land.   Under these circumstances, we cannot pronounce that the *lien* of the bank is lost, even in favor of an honest purchaser, without violating the well settled principles of law.

The amount of the debt is so small, compared to the value of the land, that we have not thought it necessary to notice the question, that might arise out of the improvements made upon it, by the complainant; but from greater caution, we will not preclude the complainant from asserting such equity as he may have, arising from the improvements put upon the land by him.   We shall therefore reverse the decree of the chancellor, and will here render the decree he should have rendered, dismissing the bill of the complainant, without prejudice, however, to his equity arising from the improvements made upon the land by him.

If the complainant should decline to discharge the debt, and prefer to have the land sold, he may assert this equity as he may be advised.   It is further ordered that the complainant pay the costs of this court, and the costs of the court below.