## SELLERS & COOK vs. HAYES.

1. A judgment creates a lien on land, the legal title to which is held by the defendant, from the time it is rendered, and a title derived through it will prevail at law over that of a vendee, who at the date of the judgment held the complete equitable, and before the sale by the sheriff, has acquired the legal title of the defendant.

2. The possession of a vendee under a bond for titles is not adverse to his vendor, and cannot prevent the lien of a judgment, rendered against the latter during its continuance, from attaching to the bond.

3. Where the record shows that a *p'uries* execution has issued on a judgment, it will be presumed, in the absence of evidence to the contrary, that others preceded it, and that the judgment had not become dormant by the failure to sue out execution within a year and a day.

Error to the Circuit Court of Marengo. Tried before the Hon. Samuel Chapman.

MANNING, for the plaintiffs in error:

1. This court has repeatedly decided that in actions of eject-ment or trespass to try titles, it will not notice merely *equitable* interests; nor will it suffer the interposition of them to prevent the transmission of the legal title in the usual and well known legal methods. One of these methods of transmitting title is by a sheriff's sale to satisfy a judgment; and the judgment at the time of its rendition, so fastens upon the *legal estate* as to prevent it from being conveyed away,·exonerated from the liability to be sold to satisfy the judgment.—See Chapman v. Glassell, 13 Ala. 50; Mitchell v. Robertson, 15 ib. 413; *Doe ex dem.* &c. Haskins, 15 ib. 619. A legal title must be somewhere liable to sale under execution, and it is not in the *vendee.*—Driver v. Clark, 13 ib. 192.

2. The time between the judgment and sale was only seven and eight years, and the sale was made under a *pluries fi. fa.* Will this court, on a writ of error, disregard this *indication*—and the rule, that the legal proceedings for the satisfaction of the judgment, are presumed *rite isse acta*—and suppose an ir-regularity, which is not *hinted at*, and that too when the court below certifies specially to the facts which induce the charge, without intimating that there was any such irregularity?

3. But if the court should presume, what the record does not any where indicate—that there had been an omission to sue out execution within a year and a day—the *pluries fi. fa.* would have been *voidable* only, and not void. Every thing done under it would be good, and no person but a party could take advantage of the irregularity.—See the comments in Stewart v. Nuckols, 15 Ala. 230-1; State v. Morgan, 7 Ired. 387; Chambers v. Stone, 9 Ala. 260; Palmer v. Clarke, 2 Dev. L. R. 354.

BROOKS and BYRD, for the defendant:

1. The adverse possession of the heirs of Varner at the rendition of the judgment is fatal to the lien of the same; and the doctrine that adverse possession does not apply to judicial sales does not meet the point in question, as in this, the adverse possession was acquired previous to the lien of the judgment, and not subsequent to it.—Jackson v. Tuttle, 9 Cowen, 233; 6 Wend. 213.

2. The purchase money having been paid at the time of the purchase, and execution of bond for titles, and previous to the rendition of the judgment, the legal title having been conveyed to the purchaser, prior to the enforcement of the supposed lien of the judgment, and the sale and deed of the sheriff, in 1844—thereby uniting the legal title with a perfect equity—the title of the purchaser will prevail over the lien of the judgment creditor, who has failed for eight years to enforce the lien.— Mooney v. Dorsey, Smedes & Marshall R. 15.

3. The bill of exceptions does not show that an execution issued within a year and a day after the judgment was rendered, and none is shown except the one under which the land was sold, in 1844, therefore, the judgment lost its lien as against the defendant, who was a purchaser for a valuable consideration and had the legal title previous to the issuance of an execution. Patton v. Hayter, Johnson & Co. 15 Ala. 18, and the cases there cited.

PARSONS, J.—This was an action of trespass to try titles to the tract of land described in the declaration. It was shown, that William K. Beck obtained a patent for the land, bearing date the 8th of August 1832, and that, on the 17th day of May 1836, a judgment was rendered in the Circuit Court of Wil-

### Sellers & Cook v. Hayes.

cox against him in favor of one Brown, for two hundred and fifty dollars. In 1844 the land was sold, under a *pluries* execution, to satisfy the judgment, and the plaintiffs became the purchasers. The defendant, to show title in himself, proved that Beck, to whom the patent issued, sold the land in 1832 to John Varner for three hundred dollars, which was paid at the time of sale, and that he executed to Varner a bond to make titles to the land. In the year 1835 or 1836, Varner cleared a portion of the land, and had claimed it as his own, from the time of his purchase from Beck. The bond, given to Varner to make titles, had been assigned to one John H. Houston, the lessor of the defendant, who took possession and has retained it ever since, either by himself or his tenants, and in the year 1842, Beck, the patentee, executed to Houston a deed of release and received from him his bond. Upon these facts, the court instructed the jury, that they must render their verdict in favor of the defendant, to which the plaintiffs excepted.

It cannot be denied that a judgment binds the lands of the defendant from the time of its rendition, and the lien thereby created is co-extensive with the limits of the State.—Campbell v. Spence, 4 Ala. 543. It is also equally clear, that the legal estate or title alone is bound by a judgment at law, and that a mere equitable title, however perfect it may be, is not bound by a judgment, nor can it be sold under execution in satisfaction thereof.—Elmore & Willis v. Harris, 13 Ala. 360. As a judgment binds the legal title, the recovery against Beck, in 1836, created a lien on the land in controversy, although in a court of equity Beck would have been held as a mere trustee for Varner, who had paid the purchase money in full and held Beck's bond for title.—1 Lomax Dig. 305. The sale by the sheriff, in 1844, gave the purchasers a title, which dates back from the day of the rendition of the judgment, for from that time the land was bound.—Morris v. Ellis, 3 Ala. 560; Curry v. The Br. Bank at Montgomery, 13 Ala. 304. These principles, which we think are incontrovertibly settled, show that the legal title of the plaintiffs is the oldest; that dates from the rendition of the judgment, whilst the deed to the defendant cannot have relation back, but gives him the legal title only from the time of its execution.—See Nickles v. Haskins, 15 Ala. 619, and cases there cited. But it is contended, that the possession

of Varner was adverse to Beck, and, being anterior to the rendition of the judgment, no lien was created by it. We do not deem it necessary to inquire, whether a judgment will create a lien on land, held adversely from the defendant at the time of its rendition, for we think it very clear, that the possession of Varner was not adverse, in that sense, that would prevent the creation of the lien, even if adverse possession, in any case, could do it.—See Nickles v. Haskins, *supra.*

It is certainly a well settled rule, that he, who obtains the possession of land by acknowledging the title of another, cannot be permitted to set up title in himself, or in a stranger, to defeat the title of him, from whom he obtained possession. Thus a tenant cannot dispute the title of his landlord, nor a trustee the title of his *cestui que trust,* and it would be a perversion of justice to permit one, who acquired possession under an executory contract, to repudiate the title of him, from whom he derived possession, and assert an adversary title in himself or another, in defiance of the contract, by which he obtained possession. A vendor of land is a trustee, pending an executory contract, of the legal title for the vendee, who in turn is a trustee for the unpaid purchase money.—Muldrom's Ex'r v. Muldrom, 2 Dana, 387 ; Grundy v. Jackson, 1 Littell, 13. To allow him to set up an adverse title to the vendor, and thereby to defeat the recovery of the purchase money, would be to permit him to repudiate his contract, whilst he held on to the benefits of it, to-wit, the possession. To this extent we should be driven, were we to sustain the argument, that the possession of Varner was adverse to the title of the defendant in the judgment, from whom he purchased.

It is true that if no suit had been brought against Varner, nor those who claim under him, until twenty years had elapsed from the time he took possession, the statute of limitations would have protected him from a recovery, but there is often a wide distinction between an adverse possession, that will give title under the statute of limitations, and such adverse possession as will enable the tenant to set up title in himself or another, or that would prevent him, who had the title, from transfering it. Thus, if A. enter into possession, as tenant of B., and afterwards disclaim the title of B. and assert title in himself, B. must bring ejectment within twenty years, or within the time

prescribed by the statute, otherwise his title will be barred.— Tillotson v. Doe on the demise of Kennedy, 5 Ala. 407. Yet we apprehend, it would not be contended, that, if ejectment had been brought within twenty years, the tenant could have been permitted to set up title adverse to the title of his landlord. Nor could his disclaimer deprive his landlord of the right to assign or transfer his title, or prevent the lien of a judgment against the landlord from attaching upon it. This view, we think, is conclusive to show, that the possession of Varner could have no influence on the lien of the judgment.

Nor can we say from the evidence, contained in the bill of exceptions, that the lien of the judgment was lost. The judgment was rendered in 1836, and the land was sold in 1844, according to the bill of exceptions, under a *pluries* execution. If it had been shown that no execution had issued within a year and a day from the time the judgment was rendered, the question would then have been presented, whether the lien would have been considered as waived or lost in favor of a *bona fide* purchaser, but as it appears that the land was sold under a *pluries* writ of *fieri facias*, we are bound to presume, or rather to know, that other executions had been issued, and, as no objection was made to their regularity, we must presume they were issued according to law.

We come to the conclusion, that at law the plaintiffs have the better title, and a court of law can look to the legal title alone, without regard to the equity of the parties. The defence of the defendant is in a court of equity, which can give effect to his prior right.

Let the judgment be reversed and the cause remanded.