# JEWETT *vs.* HOOGLAND.

[SUPERSEDEAS OF FI. FA. AGAINST ADMINISTRATOR'S SURETIES.]

1. *When fi. fa. against sureties may issue without sci. fa.*—If an execution against an administrator, on a decree of the probate court, is issued within one year after the rendition of such decree, and returned "no property found,"

an execution may be sued out against him and his sureties after the expiration of more than one year from such return, but within three years thereafter, without a revival of the decree.

APPEAL from the Probate Court of Mobile.

THE record shows these facts: The estate of Alfred Van Cleck was decreed insolvent, by said probate court, on the 31st August, 1850, on the report of his administratrix. On the 28th June, 1852, decrees were rendered by said court against said administratrix, in favor of the several creditors of the estate, one of whom was Elbert Hoogland, for their *pro-rata* share of assets in the hands of the administratrix. On the 4th June, 1853, Hoogland sued out an execution on his decree, which was returned by the sheriff "no property found." On the 23d February, 1855, he sued out another execution, against said administratrix and the sureties on her official bond, of whom the appellant was one. This execution, and another similar one, which was issued on the 16th June, 1855, were returned "no property found." A third execution against said administratrix and her sureties, issued on the 28th August, 1855, was superseded by the appellant, on the ground that there was no decree which authorized it. On the final hearing of the proceedings on the *supersedeas*, the above stated facts being shown, the court refused to quash the execution, and dismissed the petition; and its judgment is now assigned as error.

E. S. DARGAN, for the appellant.

JNO. T. TAYLOR, *contra.*

WALKER, J.—The single question made in this case, is, whether an execution, against an administrator and his sureties, can issue for the first time after the expiration of twelve months from the return of *nulla bona* against the administrator; or whether the judgment must be revived by *scire facias* against the sureties, notwithstanding the primary judgment against the administrator may not be dormant.

At common law, it was concluded, *prima facie*, that a judgment was "satisfied and extinct," where no execution was issued within a year and a day; and no other mode of revival was allowed by the common law, besides an action of debt upon the judgment. To facilitate the revival of judgments, by the statute of W. 2, 13 Edw. I, the plaintiff was allowed to have a *scire facias quare executionem non.*—2 Bla. Com. 421; 4 Com. 245, *Execution, I*, 4. Our statute, for the revival of judgments by *scire facias*, is similar to the English statute.

It is thus perceived, that *scire facias* is a remedy for the revival of a judgment, which the plaintiff is permitted to substitute for an action of debt on the judgment. If the judgment which the law infers against the sureties, as contradistinguished from the original judgment against the administrator, is one upon which an action of debt would not lie, a *scire facias* will not, and the law will not deem a revival necessary. It is clear that an action of debt could not be maintained, upon the liability to execution resulting from the return of *nulla bona*. Where debt can be maintained upon a judgment, the original cause of action, upon which the judgment is predicated, is, as to the defendant in the judgment, merged, and no suit could be maintained on such original cause of action. Higgins' case, 6 Rep. 44; 1 Chitty on Pleading, 105. The cause of action against the sureties of an administrator is not merged in the liability to execution, which the law infers from the return of *nulla bona*, because the plaintiff may have his remedy against the sureties on the bond, even after a return of *nulla bona* on the execution against the principal; and because the sureties are not estopped from contesting the validity of the bond. We conclude, that the mere naked liability of the sureties to an execution, resulting from the return of *nulla bona*, is not such a judgment as that an action of debt could be maintained on it, and, therefore, not one which the law requires to be revived by *scire facias;* the primary judgment against the administrator not being dormant.

In the case of Thompson v. Bondurant & King, 15 Ala. 346, the question before this court was, whether the statu-

tory execution could issue against one who died before the return of *nulla bona*. The court remark in the decision of that case, "that the rendition of the decree against the administrator, the execution, and return thereon 'no property' by the sheriff, are the matters of record constituting the *judgment;* and all the facts must appear of record, before the bond can have the force and effect of a judgment." We do not understand the court to mean, in thus speaking, that all the incidents of a judgment attach and belong to the right of issuing execution against the sureties. It is true that there is a judgment, so far as the right of issuing execution is concerned; but it is established law, that it does not operate as a judgment by estopping the sureties from contesting their liability. Such an effect could not be conceded to a proceeding without judicial action, and without notice. The true doctrine, in our judgment, is, that there is not, by the return of *nulla bona*, a judgment distinct and independent of the primary judgment against the administrator. The language of the old statute is, that "execution may and shall forthwith issue against the sureties."—Clay's Digest, 305, § 45. The language of the Code is, that "an execution may issue against such executor or administrator and his sureties."—Code, § 1922. The meaning of this statute is, that execution may issue upon the subsisting judgment against the sureties. By the return of *nulla bona*, the sureties become liable to execution upon the original judgment, though not original parties to it.

There is no reason for a distinction, between the statute which gives the effect of a judgment to the return of forfeiture upon a delivery bond, and the statute under which the execution in this case issued. This court, in Hopkins v. Land, 4 Ala. 427, approves the practice, upon the forfeiture of a delivery bond given by one defendant, of issuing an execution against the defendant who gave the bond and the sureties, and also the other defendants in the original judgment who were not parties to the bond. How could a defendant, who had no connection with the delivery bond, be joined with the obligors in the bond, in an execution issued upon the forfeiture of the bond, if

upon the forfeiture of the bond there is a new and distinct judgment ? If there are two distinct judgments, how is it that the obligors in the bond, and the defendants in the original judgment not joined in the bond, become parties to the same judgment, so as to be put in the same execution ? The plain answer is, that there are not two distinct judgments, and the effect of the forfeiture of the bond is simply to render the sureties liable to an execution against them, as parties to the original judgment, from the forfeiture of the bond.

If the omission to sue out execution against the sureties, within a year, would render a *scire facias* necessary as to the sureties, notwithstanding execution has been issued within due time upon the original judgment ; it would follow, that the original judgment would become dormant after ten years, although the plaintiff might regularly issue execution, from term to term, against the sureties. The original judgment might be dormant, and presumed to be satisfied, and yet there would be a regular right of execution against the defendant in the judgment and the sureties, inferred from the return of *nulla bona* on an execution against the defendant in the original judgment. The law would thus say, because an execution has not issued upon the original judgment in ten years, it is satisfied ; and because the judgment is not satisfied, as shown by the return of *nulla bona*, an execution may issue against the sureties. Thus, the theory that the return of *nulla bona* is a separate and distinct judgment, leads to a result absurd and contradictory.

The return of *nulla bona* does not make a distinct judgment. It has the effect of a judgment against the sureties, by making them liable to an execution upon the original judgment ; and if an execution has issued, within the year, upon the original judgment, the requirement of the law is complied with. No *scire facias* is necessary to revive the right of execution against the sureties, because an execution did not issue against them within a year from the return of *nulla bona*. To hold a *scire facias* necessary, in such a case, would be productive of great inconvenience, and would be at war with the established

practice. If the plaintiff in a judgment against an admin-
istrator, upon the first return of *nulla bona*, should prefer
to prosecute his remedy against the defendant in the
original judgment, and should continue to do so for more
than a year, he could not take out execution against the
sureties, although he might have continually obtained
returns of *nulla bona* up to the very time, if the appellant's
position is correct. That position asserts, that the first
return of *nulla bona* is, *ipso facto*, a judgment against the
sureties, not kept alive by the issue of execution upon the
original judgment. The plaintiff would, if such be the
law, be compelled to prosecute his remedy against the
sureties, under the penalty of its becoming dormant,
although he might desire to further press his remedy
against the principal before resorting to the sureties.

As one of the other members of this court concurs with
me in my conclusion, the judgment of the court below is
affirmed.

NOTE BY REPORTER.—No dissenting opinion was express-
ed or filed in this case.