## MILLER *vs.* THE STATE, USE, &c.

[REAL ACTION IN NATURE OF EJECTMENT.]

1. *Limitations, statute of; whether applicable to suits by State.*—The act of 1843, (Clay's Digest, 329, § 93,) which prescribes ten years as the limitation to actions for the recovery of lands, does not apply to actions by the State, since the State is neither expressly named, nor clearly intended to be included in its provisions; but this principle does not extend to a suit brought in the name of the State, for the use of a particular township, to recover lands which constituted a part of the sixteenth section.

2. *Adverse possession of sixteenth section lands.*—The possession of a purchaser of sixteenth section lands, sold by commissioners under an order of the county court, who fails to pay the purchase-money according to the terms of his contract as by law prescribed, is not adverse to the township; nor does a purchaser at sheriff's sale, under execution against him, acquire any title as against the township; yet, if such sub-purchaser receives the sheriff's deed, takes and holds exclusive possession under it, claiming the land as his own, he may acquire title against the township by the statute of limitations; and neither the provisions of section 539 of the Code, nor the proviso to the act of 1840, (Clay's Digest, 528, § 37,) nor the proviso to the act of 1837, (*ib.* 525, § 21,) in reference to the title to the lands, prevent him from availing himself of the statute as a defense to an action by the township to recover the lands.

APPEAL from the Circuit Court of Randolph.

Tried before the Hon. NAT. COOK.

THIS action was brought in the name of the State, "for the use of township seventeen, range eleven, east, in the Coosa land-district," against Samuel Miller and others, to recover the possession of a tract of land, which was described in the complaint as "the north half of the north-east quarter, and the south half of the north-east quarter, of section sixteen in said township and range;" and was commenced on the 27th March, 1855. The action was defended by Miller alone, the possession of the premises being abandoned by the other defendants before the trial. On the trial, as the bill of exceptions shows, the defendant offered in evidence the entries on the records of the county

court, in the book appropriated to sixteenth section lands, showing an order for the sale of the land in 1837, several entries relating to the notes given by the purchasers, and a receipt signed by John Whiting, as cashier of the Branch Bank at Montgomery, dated December 20, 1838, acknowledging the receipt of the notes by the bank for collection. "The defendant proved, also, that said land was sold on the — day of —, 1837; that part of the land in controversy was purchased by James Abel, who paid a portion of the purchase-money, and gave notes, with sureties, at one, two, three, and four years after date, with interest, for the residue; that the remaining portion of the land was purchased at said sale by one John E. Clark, who paid part of the purchase-money, and gave similar notes for the residue; that said sale was made at auction, by the school commissioners of said township, was reported by them to the judge of the orphans' court of said county, and was approved by him; that said notes for the purchase-money were also returned by the commissioners to said judge, and were deposited by him in the Branch Bank at Montgomery; and that said commissioners, at said sale, executed and delivered to the purchasers the usual certificates of purchase; also, that at the spring term, 1842, of the circuit court of Randolph, a judgment was rendered in favor of said Branch Bank at Montgomery, against James Abel, Joseph Abel, and F. F. Adrian, for $174 debt, besides costs, and another against John E. Clark, F. F. Adrian, and James B. Dawson, for $205 20 debt, besides costs, that executions were regularly issued on these judgments, placed in the hands of the sheriff of said county, and by him levied on said lands as the property of said defendants in execution; that said sheriff sold said lands, on the first Monday in April, 1843, at public outcry, at the courthouse-door of said county, and conveyed them, by deed in the usual form, to the defendant in this action; and that said defendant paid the purchase-money bid by him, took possession of said lands, built houses, cleared up forty or fifty acres, resided upon, and cultivated said lands, claiming

them as his own, for more than ten years before the commencement of this suit. The defendant asked the court to charge the jury, that if they believed, from the evidence, that he had held the adverse possession of the land, under color of title, for ten years before the commencement of the suit, then they must find a verdict for him. The court refused to give this charge, and the defendant excepted to its refusal;" and he now assigns its refusal as error.

.Jno. T. Heflin, for appellant.
Smith & Aiken, *contra*.

R. W. WALKER, J.—The limitations established by chapter 21, title 1, part 3, of the Code, apply only to causes of action accruing, and possessions commencing, on and after the 17th January, 1853 ; and as the possession of the defendant commenced prior to that time, in order to determine whether this suit was barred by lapse of time, we must look to the statutes of limitation in force when the Code was adopted.—Session Acts 1853–54, p. 71. The act of 1843 (Clay's Digest, 329, § 93) established ten years as the limitation of actions for the recovery of lands. But, as *laches* is not to be imputed to the government, statutes of limitations do not apply to the State, unless it is expressly named, or unless it is clear from the act that it was intended to include the State.—Angel on Lim. § 37, and cases cited; *State v. Joiner*, 23 Miss. 500. The State is not named in, and its rights are not affected by the act of 1843 ; and hence arises the question, whether this is such a suit by the State as falls within the spirit and meaning of the maxim, "*nullum tempus occurrit reipublicæ.*"

By the act of congress of 2d March, 1819, for the admission of Alabama into the Union, the sixteenth section in every township was granted "to the inhabitants of such township, for the use of schools." This court has held, that the legal title to these lands could not vest in the inhabitants of the township, as they had no corporate

existence; nor could such a capacity be conferred on them by the act of congress. And the construction placed upon this act has been, that the grant is in perpetuity to the inhabitants of the respective townships; and that the legal title to the land is in the State, in trust for the inhabitants of the respective townships in which the land is situated. *Long v. Brown*, 4 Ala. 629, 331; Code, § 501. This trust the State has executed. As early as 1819, agents were appointed to take care of the lands; and, subsequently, school commissioners were appointed, and trustees required to be elected by the township, for the management of the land and the schools in each township; and the officers thus provided for were respectively declared bodies corporate. By the Code, the inhabitants of the respective townships are incorporated, and the election of school trustees provided for, who are entrusted with the management of the sixteenth section, and are expressly authorized to direct suits at law or in equity, in all cases affecting the interest of such township.—Code, § 546. It is not to be doubted, that, by virtue of the general authority conferred upon them by the law, as it stood before the Code, the commissioners were clothed with the power to direct suits to recover the possession of the sixteenth section, when it was improperly held by a third person.—Clay's Digest, 520, §§ 7–8; 521, § 9; 522, §§ 12–13.

In Indiana, in reference to a similar grant, it has been held, than the legal title did not pass to the State, but that it vested in the inhabitants of the township, as soon as they acquired a legal capacity to take by an act of incorporation.—*State v. Springfield Township*, 6 Indiana, 94–5 ; *State v. Newton*, 5 Blackf. 455. See, also, *Trustees v. The State*, 14 How. (U. S.) R. 268, 274–5. However this may be, there can be no doubt, that the beneficial ownership of the property is in the township, and that a suit for the recovery of the sixteenth section is a suit for the benefit of the inhabitants of the township, and not for that of the State at large.—Authorities, *supra* ; *Money v. Miller*, 13 Sm. & M. 531. It is well settled, that the maxim, *nullum tem-*

*pus*, &c., applies only to the State at large, and not to the political subdivisions thereof. Hence, the statute of limitations runs against municipal corporations, and other authorities established to manage the affairs of the public subdivisions of the State.—*County of St. Charles v. Powell*, 22 Missouri, 525 ; *Lessee of City of Cincinnati v. Presbyterian Church*, 8 Ohio, 309 ; *Armstrong v. Dalton*, 4 Dev. 569 ; *Money v. Miller, supra.*

Though the State is a party to this suit, it has no real interest in the litigation. If there be a right of recovery, the property sued for belongs, not to the State, but to the township ; so that, in point of fact, the suit is substantially between the township and the defendant. The Code expressly provides that, in all cases where suits are brought in the name of the person having the legal right, for the use of another, the beneficiary must be considered as the sole party on the record.—Code, §§ 2130, 2383. In our opinion, the rule that the statute of limitations does not run against the State, has no application to a case like the present, where the State, though a nominal party on the record, has no real interest in the litigation, but its name is used as a means of enforcing the rights of a third person, who alone will enjoy the benefits of a recovery.—See *Parmelee v. McNutt*, 1 Sm. & M. 179, 182 ; *Hill v. Josslyn*, 13 S. & M. 597 ; *Money v. Miller*, 13 S. & M. 531 ; *Josslyn v. Stone*, 28 Miss. 753, 762 ; *Commonwealth v. Baldwin*, 1 Watts, 54–6 ; *Moody v. Fleming*, 4 Geo. 115, 119.

[2.] Was the defendant's possession *adverse* in such a sense as to draw to it the protection of the statute of limitations ? It appears that Abell and Clark, two of the defendants in the executions under which the defendant purchased, bought the land in controversy at sales made by the commissioners of the sixteenth section, and, having paid part of the purchase-money, and executed their notes for the balance, received the usual certificates of purchase from the commissioners. It does not appear that the balance of the purchase-money was ever paid by the defendants in execution. Having received and held possession under an

executory contract, with the terms of which they failed to comply, their possession was not adverse, and the statute of limitations did not run in their favor.—*McQueen v. Ivey*, 36 Ala. 312, and cases cited ; Clay's Digest, 525, § 21. It does not follow, however, from this, that the possession of the purchaser at the sale under executions against these vendees cannot be deemed adverse. The purchaser paid the price for which the land was sold at the execution sale, obtained the sheriff's deed, and took and held exclusive possession under it, claiming the land as his own. His possession was, therefore, under color of title, and adverse, although the defendants in execution had no estate subject to sale under execution, and the sheriff's deed passed no title to the purchaser.

It is true, that a purchaser at execution sale succeeds only to the title of the defendant in execution ; and, so far as the title is concerned, he takes the land in the same plight and condition in which it was held by the defendant in execution. It may be admitted, moreover, that, if a defendant in execution holds in subordination to a paramount title in another, and is estopped from setting up a title hostile thereto, the same *estoppel* would apply to the purchaser at the execution sale, by reason of the privity of estate between him and the defendant in execution. In the present case, the appellant acquired nothing by his purchase at sheriff's sale, not even the equitable title of the defendants in execution.—*Elmore v. Harris*, 13 Ala. 360. It may well be questioned, therefore, whether there was any such privity of estate between them as would bind the former by the same *estoppel* to which the latter was subject. However that may be, it does not affect the right of the defendant to avail himself of the statute of limitations, as a defense to this action.

Where a defendant in ejectment relies on his adverse possession for the period prescribed by the statute of limitations, as an answer to the action, he neither sets up title in himself, nor attacks that of the plaintiff; but simply relies on his undisturbed adverse possession, as a bar to the

assertion of the legal title, which the very form of his defense concedes to the plaintiff. As was said by Spencer, J., in *Smith v. Bates*, (9 Johns. 180,) "whenever this defense is set up, the idea of RIGHT is excluded." "The bar of the statute is acknowledged to originate in wrong."—*Bradstreet v. Huntington*, 5 Peters, 439, 446 ; *Woodward v. Blanchard*, 16 Ill. 430 ; *Beverly v. Burke*, 9 Geo. 444. Where the statute of limitations is the defense relied on, the deed under which the party entered is not used for the purpose of proving title in him, but as explanatory of his possession ; and it is the character of the possession, and not the validity of the title, which bars the entry of the owner.—See *Waldron v. Tuttle*, 4 N. H. 371 ; Angell, § 401.

In *Doe*, ex dem. *Ross v. Durham*, (4 Dev. & Batt. 54,) one of two tenants in common conveyed the whole land to another person, the purchaser being ignorant of the tenancy in common. It was held, that, inasmuch as the tenant in common who sold the land could not dispute the title of his co-tenant, the purchaser from him was in like manner estopped from doing so ; but that the deed, under which the latter went into possession, was *color of title*, and his possession under it, for a sufficient length of time, would bar the remedy of the co-tenant. So, the identical principle here involved is asserted in the cases which decide, that where the defendant in execution holds only under a bond for title, and has not paid the purchase-money, the sheriff's deed to the purchaser at execution sale is nevertheless color of title, and, if the latter enters under it, is the starting point from which the statute of limitations runs in his favor against the true owner.—*Stamper v. Griffin*, 12 Geo. 450, 458 ; *Beverly v. Burke*, 9 Geo. 440, (443–4) ; *Hester v. Coats*, 22 Geo. 56, 58. See, further, Angell on Lim. § 440, note 3, §§ 386, 390, 401 ; *Clapp v. Bromagham*, 9 Cow. 554, 556–7–8 ; *Newman v. Chapman*, 2 Rand. 93 ; *Smilie v. Biffle*, 2 Barr, 52 ; *Woodward v. Blanchard*, 16 Ill. 433; *Northrop v. Wright*, 7 Hill, 476 ; *Sellers v. Cook*, 17 Ala. 752; *McQveen v. Ivey*, 36 Ala. 313 ; *Abercrombie v. Bradford*, 15 Ala. 370 ; *Herbert v. Hanrick*, 16 Ala. 595.

Neither the *proviso* to the act of 1840, (Clay's Digest, 528, § 37,) declaring that "the title to land sold as aforesaid shall never be divested out of the township, until the final payment of the debt and interest ;" nor the *proviso* to the act of 1837, (Clay's Digest, 525, § 21,) nor section 539 of the Code, has any application to this case. In our opinion, neither of the two *provisos*, nor the section of the Code referred to, was intended to cut off a party, in adverse possession under color of title, from the benefit of the statute of limitations.

It results, that the court erred in refusing to give the charge asked by the defendant.

Judgment reversed, and cause remanded.