## Case No. 17,926.

### WOLF v. PLUNKETT.

[1 Flip. 427.] [1]

Circuit Court, W. D. Tennessee. April 2, 1875.

JUDGMENT LIEN — RIGHTS OF EXECUTION PURCHASER—PRIOR EQUITIES—EJECTMENT.

1. Notwithstanding the decree of a court of chancery divesting the legal title of a judgment

debtor before a sale under execution of the land in controversy, the purchaser at such sale will prevail at law over the owner of the junior legal title, even if it were founded on the older equity.

2. P. exchanged lands with L. and wife. This was on Sept. 28, 1867. On the 12th of September, 1867, a judgment had been rendered against P. at the suit of another person, and the lien attached, as a matter of course to the land of P. L. and wife, becoming dissatisfied at this turn of events, proposed a cancellation of the exchange; the same was agreed to by P., and L. and wife were put into possession of the land they had conveyed to P. The judgment creditor proceeded with his execution; the land now in possession of L. and wife was sold, and the owner of the judgment bought it in, and thereupon died. His devisee brought suit against defendant in ejectment to recover the same, the title to which had passed by sale from L. and wife through several hands before vesting in defendant: *Held*, that the purchaser at the execution sale had the better title, and that his devisee was entitled to recover.

3. And if L. and wife, through whom defendant traced his title, had any equity which is good and was subsisting when plaintiff's testator obtained his judgment, they can assert the same in a court of chancery, and there only.

4. Courts of law cannot notice equities.

Mrs. Looney owned the tract of land in controversy. She and Pfannenstiehl made a trade by which Pfannenstiehl conveyed her certain property in Memphis, and Mrs. Looney conveyed him the tract of land in question and other tracts. The last mentioned conveyance was made on the 28th of September, 1867. On the 12th of September, 1867, the plaintiff's testator, Louis Wolf, recovered against Pfannenstiehl in the circuit court of the United States for the district of West Tennessee, a judgment for a debt. He caused the land involved in this suit to be levied on by the marshal of the United States, under an execution issued on the judgment, and to be sold, and bought it, and took a deed from the marshal conveying it to him. A dispute arose between Mrs. Looney and Pfannenstiehl as to the trade they had made, and Mrs. Looney filed a bill to have it cancelled. On the 6th day of April, 1868, a decree was entered in the suit just referred to, which was in the chancery court of Shelby county, whereby, by the consent of the parties (Mrs. Looney and Pfannenstiehl,) the trade between them was cancelled, and the title to the tract of land now in dispute, was divested out of Pfannenstiehl and was vested in Mrs. Looney. Mrs. Looney then conveyed her title to George Gantt. The latter conveyed to Bradshaw, and Bradshaw conveyed to Elijah Plunkett, who took possession, after which the suit was brought. Pfannenstiehl was in possession of the land from September, 1867, when he made the trade with Mrs. Looney, until April, 1868, when the trade was cancelled between them and he returned the possession to Mrs. Looney. Louis Wolf died and devised the land to the plaintiff [Dorothea Wolf] by his will, and she brought the action of ejectment against Plunkett after he entered into pos-

---

[1] [Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

session. The cause was tried before Hon. BLAND BALLARD, District Judge of the United States for the district of Kentucky, sitting in the circuit court of the United States, at Memphis, and a jury. There was a verdict for the plaintiff, and a motion for a new trial by the defendant.

Wm. M. Randolph, for plaintiff.

George Gantt and Duncan K. McRae, for defendant.

BALLARD, District Judge. I still think that the purchaser, who claims under the plaintiff's judgment and the marshal's sale, has a better legal title than the claimant under the decree rendered in the suit of Looney and wife against Pfannenstiehl, which suit was instituted after the judgment was rendered and after the lien of the judgment had attached to the land in contest.

It is not disputed that had Pfannenstiehl voluntarily conveyed the land to Looney after the judgment, the title of Looney would be inferior to that of the execution purchaser. Now, the decree under which Looney and the defendant claim having been rendered by consent, I am by no means certain, that it confers any better title than the private deed of the party would have conferred. Indeed, I am, strongly inclined to think it does not.

But, it is said that the lien of the judgment attaches only to the interest of the judgment debtor in the land, and does not disturb any prior equity. This may be true, but it is not perceived how the defendant's case is helped thereby. Concede that Looney has an equity which is not affected by the plaintiff's judgment and purchase, this equity cannot avail in this action. This is an action at law; and it is well settled that courts of law cannot notice equities.

Moreover, I do not see how it can be assumed in this case that Looney had any such prior equity. There is no evidence of it, unless it be found in the record of the suit of Looney and wife against Pfannenstiehl. But the plaintiff in the judgment against Pfannenstiehl was not a party to this suit, and it is not perceived how he can be affected by its admissions and findings.

Defendant's counsel do not insist that the institution of the suit by Looney and wife against Pfannenstiehl precluded plaintiff from enforcing his judgment. He does not claim that plaintiff is a lis pendens purchaser. He concedes that plaintiff's title relates to the date of his judgment, or at least to the date of his lien. But he insists that the title of the judgment debtor, having been divested by the decree of a court of competent jurisdiction—in virtue of what he calls a prior equity in Looney and wife before the sale under the execution—no title was obtained by the execution sale.

I do not admit the correctness of this proposition, and I have been referred to no authority which sustains it. I have never before heard it asserted that a junior legal title could at law prevail over an older one, even though the former were founded on the older equity.

The case of Parks v. Jackson, 11 Wend. 442, so confidently relied on by defendant's counsel, does not at all militate against this view. The majority of the court in that case decide that a party who receives a conveyance, pending a suit against the grantor affecting his title, is not a lis pendens purchaser, if the conveyance were made in pursuance of a valid consideration existing prior to the institution of the suit. Consequently, as he who acquired his conveyance in pursuance of such obligation had the older legal title, his title is, at law, the better.

The unsuccessful party in that case had no title under an execution sale made in pursuance of a judgment, which was a lien. The majority of the court expressly say, that the deed of the sheriff was void; and it is because of this—as I understand the opinion—that the purchaser at the sale by execution failed.

The authority of this case is in one respect adverse to defendant. It shows that the sale under the judgment and execution was valid, notwithstanding the pendency of the suit of Looney and wife, and this position is abundantly sustained by other authority. The other cases cited by counsel of defendant do not sustain his position. They only establish that a valid equity is not affected by a subsequent judgment lien.

Counsel infer too much from the statement of the court in the case of Nickles v. Haskins. 15 Ala. 622. In that case the execution debtor had, prior to judgment, given a bond for title, and in performance of his bond he had, after the sale under the judgment and execution, conveyed. The court, following strictly the facts, say: "The defendant in the execution. at the time the land in question was sold, had not executed a deed pursuant to his bond, and consequently had a legal title which might be sold and conveyed by the sheriff." The court are not to be understood as intimating that, had the defendant in execution executed a deed pursuant to his bond before the sale under execution, he would have had no legal title which could be sold. They confine themselves to the facts of the case before them. The deed in that case, which was executed pursuant to the bond given before the judgment under which the plaintiff claimed was in fact executed, not only after the judgment, but after the sale and conveyance made by the sheriff; and the court, in deciding against the title under the deed, stated the fact respecting the time of its execution without at all intimating that the title would have been any better had the deed been made before the sale by the sheriff. The bond, say the court, would only invest the defendant with a mere-

equitable title, etc., etc., and such title cannot be set up as a bar to a recovery in ejectment. That the inference which defendant's counsel would draw from this case is incorrect, may be conclusively shown by the subsequent case in the same court, of Sellers v. Hayes, 17 Ala. 749. It appears that in this case Beck obtained a patent for the land in controversy, August 8, 1832. Immediately afterwards, in 1832, he sold the land to Varner, who paid the purchase money, and in 1835 and 1836 entered into possession. Varner assigned his bond for title to Houston, who took possession and retained it until the suit; and in 1842 the patentee, Beck, conveyed to Houston.

On the other hand, the plaintiff showed that on the 17th of May, 1836, a judgment was rendered against Beck in favor of one Brown, for $250; and in 1844 the land was sold under a pluries execution to satisfy the judgment, the plaintiff becoming the purchaser.

It thus appears that at the time of the judgment Beck had the legal title, and Varner or his assignee, Houston, the equitable title, and that at the time of the sale under the execution Houston had both the legal title and the possession. But the court decide that his legal title at law was inferior to the purchaser's under the execution; and among other cases to which they refer in support of their decision, is Nickles v. Haskins, supra.

The court say: "It cannot be denied that a judgment binds the lands of the defendant from the time of its rendition, and the lien thereby created is co-extensive with the limits of the state. Campbell v. Spence, 4 Ala. 543. It is equally clear that the legal estate or title alone is bound by a judgment at law, and that a mere equitable title, however perfect it may be, is not bound by a judgment, nor can it be sold under execution. * * * As a judgment binds the legal title, the recovery against Beck in 1836 created a lien on the land in controversy, although in a court of equity Beck would have been held as a mere trustee for Varner, who had paid the purchase money in full and held Beck's bond for title. The sale by the sheriff in 1844 gave the purchasers a title which dates back from the day of the rendition of the judgment, for from that time the land was bound. 3 Ala. 560; 13 Ala. 304. These principles, which we think incontrovertibly settled, show that the legal title of the plaintiff is the oldest; that dates back from the rendition of the judgment, whilst the deed to the defendant cannot have relation back, but gives legal title only from the time of its execution."

The principle decided in this case is supported by numerous decisions in Tennessee, and is, in fact, the general principle everywhere recognized. If there is any opposing decision, my attention has not been called to it. The decision and the doctrines announced in it are entirely conclusive against the claim of defendant, so far as it is founded on his supposed equity and the subsequent decree.

I come now to the matter which seems to be most relied on by defendant, and in respect to which I have, from the opening of the trial, had most doubt. He insists a new trial should be granted, because it does not appear that the land, of which defendant is in possession, is the same land which was sold under plaintiff's execution. But it is to be observed that this question was fairly submitted to the jury, and they have found against defendant. It is not claimed that any improper evidence was submitted to the jury. No ground, therefore, is presented for disturbing their verdict, except such as goes to the submitting of the question to the jury at all. And hence, defendant's counsel insist, with much earnestness, that the levy under which plaintiff claims is void for uncertainty, and that the court should, in consequence of this defect in plaintiff's title, have told the jury to find for the defendant.

After examining all the authorities referred to by defendant's counsel, and after the fullest consideration, I remain of the opinion expressed at the trial, that the levy is not void. It is certainly not as specific as it might have been, but it is, I think, sufficiently specific to distinguish with reasonable certainty the land levied on from other lands owned by Pfannenstiehl.

The levy describes the land as "a tract of land in the strip * * * between the old and new state line of Tennessee, containing 159 acres, known as the northwest quarter of section seventeen (17) and the John Devine Place," levied on as the property of Charles Pfannenstiehl.

Here is much more particularity and minuteness of description than any of those which were held void in the cases referred to by counsel. In Pound v. Pullen, 3 Yerg. 338, the land levied on was not otherwise described than as "eight thousand acres of land, lying in four different tracts." In Brown v. Dickson, 2 Humph. 395, as "lot No. —— in the town of Greenville"; in Huddleston v. Garrott, 3 Humph. 629, as "all the unsold land of the heirs of McIver in the bounds of Overton county and which lies within the bounds of the forty thousand acre tract, granted by the state of North Carolina to Stockley Donelson and William Terrell by grant No. 289"; in Taylor v. Cozart, 4 Humph. 433, as "three tracts of land, one containing 300 acres; another 50 acres, and another 110 acres, all in the county of Carroll—the property of H. Cozart; and in Lafferty v. Conn, 3 Sneed, 221, as "350 acres of land the property of Edmond Collins."

Now, in all these cases it will be seen that the description is so vague that it does not, except perhaps in the case of Huddleston v. Garrott, furnish the slightest clue to the locality of the land referred to; and, if the description in the present case were like any of these, I should not hesitate to pronounce it void. But it is not at all like any of them. It is more like the case of Parker v. Swan, 1 Humph. 80, and Trotter v. Nelson, 1 Swan, 7, respectively. In the former the levy was "on the right, title,

claim and interest that John Dock has in and to 70 acres of land lying on the west fork of Stone's river;" and in the latter the levy was on "two tracts of land of the defendant John Colter lying in Sevier county, in the 6th district; one of said tracts containing 122 acres, and the other 140 acres," etc.

In the course of their opinion in the latter case the court say: "There can be no uncertainty in the matter, unless it should happen that the same person has other tracts in the same civil district containing the same quantity of acres, which is very improbable."

The description which I am asked to pronounce void, is much fuller than that which the court here adjudged good, and the language here used by the court may be employed in the present case, mutatis mutandis.

There can be no uncertainty in the matter, unless it should happen that Pfannenstiehl owns two northwest quarter sections in the strip between the old and new state lines of Tennessee, each containing one hundred and fifty-nine acres; which is very improbable.

It rarely happens that a description in a deed or levy of land can be so certain as to dispense with all parol proof to fix its identity, and nothing is better established than that such proof may be resorted to when the description is not on its face so vague as to render it void. There is nothing vague on the face of the description here. I do not know that there is more than one northwest quarter section No. 17, in the strip referred to in the levy—especially do I not know that there is more than one northwest quarter section which belongs to Pfannenstiel, and still more especially do I not know that there is more than one northwest quarter section No. 17 in that strip which belonged to Pfannenstiel and containing only one hundred and fifty-nine acres.

The levy not being void on its face, the case was properly submitted to the jury, and I think they were more than authorized to find as they did. The motion for a new trial is therefore overruled.

In conclusion I must be permitted to say: First, that in my opinion, Wolf was not only a proper, but a necessary party to the suit of Looney and wife against Pfannenstiehl, and that as he was not a party thereto he is not concluded by the decree rendered therein. Second, that if Looney and wife have any equity which is good, and which was subsisting when Wolf obtained his judgment—they can assert it in a court of equity, and in a court of equity only.