## JEFFERSON TRICKLE

*v.*

## THE STATE OF ILLINOIS.

*Opinion filed October 29, 1891.*

1. COMMISSION OF CLAIMS—*not restricted to consideration of claims which can only be prosecuted in court of law.* The statute does not restrict the Commission to the consideration of claims which can only be prosecuted in a court of law, and under the rules there prevailing in regard to proper parties.

2. SAME—*claims to be determined according to equity and justice.* The Commission of Claims is enjoined by the act creating it to determine all claims according to the principles of equity and justice, except when otherwise provided by the laws of the State.

3. LIMITATIONS—*theory upon which laws proceed.* All limitation laws proceed on the theory that the party by lapse of time and omissions on his part has forfeited his right to assert his title in the law. All statutes of limitations also must proceed on the idea that the party has full opportunity to try his right in the courts.

4. SAME—*statutes rest upon sound public policy.* Statutes of limitations rest upon principles of sound public policy, and are not to be evaded except by the methods provided therein. If claimants stand by inactive and permit their claims to be barred, it is not the law, but the party, who is responsible for the hardships entailed.

5. SAME—*statute runs against all claims except those sought to be enforced by government.* The statute of limitations runs against all claims except those which are sought to be enforced by the government in its name and in its behalf.

6. SAME—*government may avail itself of provisions of statute.* The government, although not precluded by the statute, may nevertheless avail itself thereof in suits against it, where there is a statute authorizing individuals to bring suits against it.

7. STATE INDEBTEDNESS—*policy of State toward creditors.* It has been the settled policy of the State for more than forty years to induce all persons having claims against it whether adjusted or not to present them that they may be satisfied in some manner.

This claim was filed with the Auditor of Public Accounts, August 1, 1882. The claim is based upon an in-

strument partly in print, and partly in writing, which reads:

100                    Issued on No. 754.                    100
                    Office of the Board of Public Works.
                              Springfield, Ill.
No. 5545 B                                     March 18th, 1840.
          Fund Commissioner of the State of Illinois.

Pay to the order of H. Fellows, Commissioner of the Board of Public Works, one hundred dollars, with interest from August 14th, 1840, until paid, at the rate of six per cent per annum and charge same to draft No. 754 dated July 15th, 1840.

Wm. Prentiss, Sec'y.                    J. Hogan, Pres.
100                                                     100
                    Endorsed "Pay bearer,
                                        H. Fellows, Com."

It is alleged that said claim accrued at Springfield in the County of Sangamon in the State of Illinois, at the date of said instrument, and that the claimant has been the "owner of said instrument or evidence of indebtedness ever since some time in the fall of the year 1840," and that he has had the same in his actual possession during the whole of the time since, except such time as it had been in the hands of his attorneys, Messrs. Hopkins & Hammond, for collection. That the principal with accrued interest remains due and unpaid.

That he purchased said claim for a valuable consideration of Martin B. Mason, of Knox county, Illinois, and received possession thereof from him. The Attorney General was notified of the filing of said claim. And the depositions of the claimant, Jefferson Trickle, and of Martin B. Mason were taken on the tenth or eleventh of August, 1882, in support of said claim. It appears that Trickle at the time the depositions were taken was seventy-seven (77) and Martin B. Mason seventy-four (74). It appears that Martin B. Mason was the son of Jacob Mason, and his administrator, and as such paid Jefferson Trickle among other funds certain Canal scrip which at that time was used and considered as money

and so considered and used in that transaction. That he had three pieces of this scrip of a hundred dollars each, and that in June, 1840, he delivered one of them to Jefferson Trickle, son-in-law of Jacob Mason on his share of the estate. That Mason died in October, 1837. The scrip was received by the administrator after the death of Jacob Mason. Trickle testifies that he became the owner through Martin B. Mason in either November or December, 1840; that he received it from the administrator of Jacob Mason's estate, in payment of one hundred dollars ($100.00) which he had deposited with said Mason in his lifetime with which to purchase a tract of land, but which had not been used for that purpose.

On the 20th of August, 1889, the Attorney General filed his objections to the claim:

First—That the facts stated as the basis of the claim are insufficient to entitle the claimant to have it allowed.

Second—That the claim was neither proved nor filed in the office of the Secretary of State previous to the 1st day of January, 1849, nor within two years from the time such claim may have arisen, as required by the statute in that behalf; and on August 4th, 1890, by leave filed an additional plea to the effect that the claim ought not to be allowed because more than twenty years elapsed after said claim accrued prior to the filing of said claim with this Commission and the commencement of the suit and that the same is forever barred by reason of the laches of said claim, and the statute of limitations.

It will be observed that the instrument upon which the claim was made is dated March 18th, 1840, is to bear interest from August 14th, 1840, and is to be charged to, or paid out of draft No. 754 dated July 15th, 1840.

There is no evidence explaining why it was to be paid out of a draft that was not to be issued for nearly four months subsequently, nor why it was made payable to the order of H. Fellows, Commissioner, nor upon what account he paid it out.

Counsel for claimant and the Attorney General seem to differ in their opinions under which act of the Legis-

lature this paper was issued; the Attorney General contending:

First—The scrip claimed for was not issued by any one having authority to bind the State for the payment of money.

Second—Said scrip does not purport to bind the State or to be the obligation of the State for the payment of money.

Third—There is and was no authority to issue any scrip or drafts of this character which should be the binding obligations of the State.

Fourth—Said supposed scrip is only an order or draft for the transfer of funds from one proper custodian to another and is not and does not purport to be an obligation on the part of the State of Illinois, and neither creates a liability of the State to the officer named as payee in said draft nor to his assigns.

Fifth—The scrip was not negotiable and cannot be recovered upon by an assignee.

The Attorney General proceeds to argue that the draft or scrip in question, if legal, must be based upon the twenty-fourth section of the Act of February 27, 1837, relating to the construction of the Illinois and Michigan Canal; and shows quite satisfactorily that it cannot be supported as a valid document under the provisions of that Act.

The claimant insists that this scrip or draft was issued pursuant to the provisions of section ten, of the Act of February 1, 1840, providing a method for fully settling and closing up all claims and demands against the State which had grown out of its system of internal improvements, which section contains the provision that "the Board of Public Works shall also settle and adjust all dues and liabilities of every kind due and owing from the State under the provisions of the Act to establish and maintain a general system of Internal Improvements, approved February 27, 1837, and the acts supplemental and amendatory thereto, and give drafts for the amounts so settled and adjusted on the fund commissioner: And

when any person should receive drafts under the provisions of this section, his contract should be settled."

We are inclined to adopt the reasoning of the claimant on this point and hold that the paper in question might have been issued under the authority of that section.

We are also inclined to overrule the objection that "the paper in suit was not negotiable, and therefore cannot be recovered upon by an assignee in his own name." We think it immaterial, whether the claim is presented by the original owner, or by his "legal representatives" in any sense of these words. We do not understand the statute to restrict the Commission to the consideration of claims which can only be prosecuted in a court of law, and under the rules there prevailing in regard to proper parties.

We hold it sufficient that the allowance and payment of the claim would bar the claim by any other person.

We are enjoined by the act creating the Commission, to determine all claims according to the principles of equity and justice, except when otherwise provided by the laws of the State.

Act of 1877, Sec. 2.

We think a consideration of the several acts of the legislature pertaining to the funding and payment of the Canal indebtedness in connection with the evidence shows that paper of the character of that under consideration was in circulation among the people, and received and treated as legal; and if such was the contemporaneous construction of the laws, we think it should be adhered to now.

The question that gives the Commission most anxiety is whether the claim is barred by any statute or law of limitations, or laches of the claimant.

It is proper to inquire first, whether the State had provided a way for the claimant to enforce the payment of his claim or to procure an adjudication settling its validity.

All limitation laws proceed on the theory that the

party by lapse of time and omissions on his part has forfeited his right to assert his title in the law. All statutes of limitations also must proceed on the idea that the party has full opportunity afforded to try his right in the court.

Cooley's Constitutional Limitations 455-456; *Stearns* v. *Gittings,* 23 Ill., 389.

We believe an examination of the statutes will show that persons holding claims against the State have always been provided with a remedy under the laws.

By an Act in force June 1, 1829, it was made lawful for the Auditor of Public Accounts of the State of Illinois to be sued and to sue, to plead and to be impleaded, to answer and to be answered, to defend and to be defended in any court of record or other place where justice shall be judicially administered, in the name of the Auditor of Public Accounts for the people of the State of Illinois; and it was made the duty of the Attorney General to prosecute and defend all such suits. Appeals were provided for to the Supreme Court. If final judgment should be rendered against the Auditor it was his duty to forward a copy of the judgment and proceedings thereon to the next general assembly when if approved an appropriation should be made to satisfy it or such part as the General Assembly might deem just.

This Act was continued in force and is found in the revised statutes of 1845, Chapter 77, entitled "Officers," page 394.

The same Act is found in the second volume of Purple's Revision published in 1856 at page 787.

It is also included in the Revision of the laws, Scates, Treat & Blackwell, published in 1858, and found on page 797.

The same statute is also found in the third edition of the first volume of the statute edited by Gross, page 468, which is declared to contain all the general laws of the State. And received the sanction of the Legislature by an Act approved March 10, 1869.

These provisions of the Statute may have been con-

tinued in force after the adoption of the constitution of
1848 in compliance with section thirty-four (34) of Ar-
ticle III of that instrument providing that "the General
Assembly shall direct by law in what manner suits shall
be brought against the State." We find no statute of
limitations expressly governing actions against the
State, except that of March 1, 1847, found in the first
volume of Purple's Compilation, page 482, and in that
of Scates, Treat & Blackwell, page 1170.

This act is limited to unliquidated claims against the
State. This statute was enacted, "So that future Legis-
latures may know what unliquidated claims do exist
against the State, and the grounds on which they are
founded."

The claimant testifies that he never before made any
effort to have this scrip paid by the State, that he always
considered it secure and doing as well as he could with
the money.

In claimant's brief, filed September 11th, 1890, it is
said the paper is an inland draft in due form, and by
the payee endorsed to the bearer and put in circulation.

If this be the true construction it must be subject to
the limitation laws applicable to such paper unless the
statutes of limitation do not apply when the State is
defendant.

Statutes of limitations were formerly regarded with
little favor, and teh courts devised numerous expedients
and theories for their evasion; but latterly they are
considered as beneficial and resting on principles of
sound public policy, and as not to be evaded except by
the methods provided therein.

> Wood on Limitation of Actions, p. 5, Sec. 4 and
> note.

It is said "There certainly can be no hardship in re-
quiring parties to settle their business matters within
certain reasonable periods; and if, with the sure pros-
pect of losing the rights to a remedy thereon, they
stand by inactive and permit their claim to be barred,

it is not the law, but the party, who is responsible for the hardships entailed."

Wood on Limitation of Actions, p. 6;

*Fisher* v. *Harnden I. Paine* (U. S. C. C.) 61.

The statute is said to run against all claims except those which are sought to be enforced by the government in its name and its behalf.

*Miller* v. *State,* 38 Ala., 600;

Wood on Limitations, 92.

The government although not precluded by the statute, may nevertheless avail itself thereof in suits against it, where there is a statute authorizing individuals to bring suits against it.

Wood on Limitations, 93;

*Baxter* v. *State,* 10 Wis., 454;

II Coke, 68.

From a consideration of the various statutes relative to the State indebtedness we believe it to have been the settled policy of the State for more than forty years to induce all persons having claims against it whether adjusted or not to present them that they might be satisfied in some manner; the statute specially providing that the owner of any of this scrip may present it to certain public officers mentioned in the statutes and receive in exchange the bonds of the State in payment—see:

Act of February 1, 1840, laws 1840, p. 79;

Act of February 21, 1843, laws 1843, p. 54;

Act of March 3, 1843, laws 1843, p. 62;

Act of March 1, 1845, laws 1845, p. 31;

Act of February 27, 1847, laws 1847, p. 22;

Act of February 25, 1847, laws 1847, p. 23;

Act of February 16, 1847, laws 1847, p. 24;

Act of February 22, 1847, laws 1847, p. 165;

Act of February 14, 1855, laws 1855, p. 161.

We therefore hold that the claim is barred by the stat-

utes of limitations and laches of the claimant as insisted upon by the State in its plea filed August 4, 1890.

The claim is therefore rejected.

E. D. BLINN, *President.*

R. D. ADAMS, *Commissioner.*

W. S. KAY, *Commissioner.*

I agree with the above written statement of the reasons for the determination reached.

I am also of the opinion that the Commission has no jurisdiction of the claim as it is presented.

It seems to me if it ever was a valid claim against the State that when issued it was an adjusted claim, and not embraced within any of the clauses of section 2 of the Act in force July 1, 1889, conferring jurisdiction on this Commission; unless under the first clause of section 2 the claim had been specially referred to the Commission by one or the other of the houses of the General Assembly.

I think the claim should be presented to the Legislature, when, if satisfied the paper evidenced a legal demand, it should determine whether public policy demands that the statute of limitations should be enforced; especially as the State has never directly declared that any other statute of limitations shall be enforced in its favor than the Act of March 1, 1847, relating to unliquidated claims, and that class of claims embraced in the second clause of the second section of the Act of July 1, 1889, creating the Commission of Claims.

W. S. KAY, *Commissioner.*